# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

## NO. 03-08-00058-CV

**Texas Board of Chiropractic Examiners and Glenn Parker, Executive Director, Appellants**

**v.**

**Texas Medical Association and Texas Medical Board, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-06-003451, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion dated August 15, 2008, and substitute the following in its place. The Court has overruled the motion for rehearing en banc filed by the Texas Board of Chiropractic Examiners and its executive director.

The Texas Board of Chiropractic Examiners and Glenn Parker, its executive director (collectively, the "Chiropractic Board"), appeal from a district court order denying their plea to the jurisdiction in a suit brought by the Texas Medical Association (TMA) and the Texas Medical Board ("Medical Board").[1] For the reasons explained below, we will affirm the district court's order.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

Against the backdrop of the longstanding scope-of-practice disputes involving chiropractors, physicians, and other health care providers,[2] the Seventy-Ninth Texas Legislature, in its 2005 Sunset Bill for the Texas Board of Chiropractic Examiners, amended chapter 201 of the occupations code to expressly exclude from the scope of practice of chiropractic "surgical procedures" defined as procedures "described in the surgery section of the common procedure coding system as adopted by the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services." Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 1, sec. 201.002(a), 2005 Tex. Gen. Laws 3464, 3465 (current version at Tex. Occ. Code Ann. § 201.002(a)(4) (West Supp. 2007)) (adding definition of "surgical procedures"); *see* Tex. Occ. Code Ann. § 201.002(c)(1) (West Supp. 2007) (preexisting exclusion of "incisive or surgical procedures" from the scope of chiropractic practice). In the same bill, the legislature also mandated that the Chiropractic Board:

> . . . shall adopt rules clarifying what activities are included within the scope of practice of chiropractic and what activities are outside of that scope. The rules:

---

[2] *See, e.g., O'Neal v. Texas Bd. of Chiropractic Exam'rs*, No. 03-03-00270-CV, 2004 Tex. App. LEXIS 8254, at *2-10 (Tex. App.—Austin Sept. 10, 2004, no pet.) (mem. op.) (regarding whether needle electromyography—"needle EMG"—is within the scope of practice of chiropractic); *Continental Cas. Co. v. Texas Bd. of Chiropractic Exam'rs*, No. 03-00-00513-CV, 2001 Tex. App. LEXIS 2336, at *1-8 (Tex. App.—Austin Apr. 12, 2001, no pet.) (not designated for publication) (regarding whether needle EMG and manipulation under anesthesia (MUA) are within scope of practice of chiropractic); Op. Tex. Att'y Gen. No. JC-0379 (2001) (whether "spinal manipulation" is within scope of practice of acupuncture); Op. Tex. Att'y. Gen. No. DM-472 (1998) (whether use of injectable substances is within scope of practice of chiropractic); Op. Tex. Att'y Gen. No. DM-415 (1996) (whether acupuncture was within scope of practice of chiropractic). *See also Texas Mut. Ins. Co. v. Stelzer*, No. 03-06-00675-CV (Tex. App.—Austin, notice of appeal filed Nov. 2, 2006), which presents issues regarding whether needle EMG is within the scope of practice of chiropractic.

(1)     must clearly specify the procedures that chiropractors may perform;

(2)     must clearly specify any equipment and the use of that equipment that is prohibited; and

(3)     may require a license holder to obtain additional training or certification to perform certain procedures or use certain equipment.

Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 8, sec. 201.1525, 2005 Tex. Gen. Laws 3464, 3466 (current version at Tex. Occ. Code Ann. § 201.1525 (West Supp. 2007)).  When formulating these rules, the legislature also required that the Chiropractic Board "establish methods under which [it], to the extent appropriate, will seek input early in the rule development process from the public and from persons who will be most affected" by the proposed rule through methods that "must include identifying persons who will be most affected and soliciting, at a minimum, the advice and opinions of those persons," and "may include negotiated rulemaking, informal conferences, advisory committees, and any other appropriate method."  Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 8, sec. 201.1526, 2005 Tex. Gen. Laws 3464, 3466 (current version at Tex. Occ. Code Ann. § 201.1526 (West Supp. 2007)).

Sections 201.1525 and 201.1526 implemented Sunset Advisory Commission recommendations aimed at requiring "the Board to cease its practice of issuing Board opinions" to address scope-of-practice issues[3] and instead "follow the State's rulemaking process" so as to "clearly define the practices and technology that chiropractors can and cannot use to treat patients

---

[3] *See O'Neal*, 2004 Tex. App. LEXIS 8254, at *2 (noting Chiropractic Board's practice of issuing "statements" or "memoranda" rather than rules to address issues regarding scope of practice for chiropractors).

by rule, using the input of stakeholders early in the rulemaking process." Sunset Advisory Commission, *Sunset Commission Decisions: Texas Board of Chiropractic Examiners* (May 2004), at 3. As the Sunset Commission observed, one implication of this requirement was that the Chiropractic Board would effectively be "require[d] to submit all of its previous opinions to this rulemaking process." *Id.*

The legislature gave the Chiropractic Board until January 1, 2006, to adopt the rules required under section 201.1525. Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 38, 2005 Tex. Gen. Laws 3464, 3474. The Chiropractic Board published a proposed scope-of-practice rule in the *Texas Register* for public comment on December 16, 2005. 30 Tex. Reg. 8383 (2005). It ultimately adopted a final rule, which was published in the *Texas Register* on June 2, 2006. 31 Tex. Reg. 4613 (2006) (codified at 22 Tex. Admin. Code § 75.17 (2008)). The rule addressed a number of procedures that had generated controversy. At issue in this appeal is the Chiropractic Board's action in regard to one of those procedures, manipulation under anesthesia, or "MUA." In the preamble to its rule, the Chiropractic Board stated:

> Manipulation under anethesia (MUA) has been part of the practice of chiropractic in Texas for more than 25 years. The Board has not received any complaints regarding the practice of MUA and the principal malpractice insurance carrier for chiropractors in Texas has likewise not received any claims. However, MUA is listed under the surgical codes of the CPT Codebook. Consequently, the Board is still reviewing several issues regarding MUA amd whether it is within the scope of practice of chiropractic in Texas as described under the Chiropractic Act. In the absence of any evidence of a risk to the public health, the Board has elected to not disturb the status quo until it has reached a final conclusion on whether MUA remains within the scope of practice in Texas.

4

31 Tex. Reg. at 4615. As noted above, the legislature in the 2005 amendments had expressly excluded from the scope of practice of chiropractic "surgical procedures" defined as procedures "described in the surgery section of the common procedure coding system as adopted by the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services." *See* Tex. Occ. Code Ann. § 201.002(a)(4). According to its statement regarding MUA in the preamble, the Chiropractic Board was electing to "not disturb the status quo" with its rules, which was—as the statement had previously recited—that chiropractors perform MUAs. The new rule did not expressly address MUAs nor did it prohibit the practice. The only guidance that the Board gave on the subject was to express the view in the preamble to the rule that it was not disturbing the "status quo."

The TMA filed suit challenging several provisions of the Chiropractic Board's scope-of-practice rule. With respect to MUA, the TMA alleged that the rule, by purporting to maintain a "status quo" in which chiropractors were being permitted to perform MUA, conflicted with the legislature's rulemaking mandate in section 201.1525 and chapter 201's explicit exclusion of "surgical procedures," as now defined in the 2005 amendments, from the scope of chiropractic practice. *Id*. §§ 201.1525, .002(a)(4), .002(c)(1).[4] The TMA requested a declaration under the Uniform Declaratory Judgments Act that the scope-of-practice rule conflicted with these statutory mandates. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). TMA also sought

---

[4] The TMA also alleged that the rule conflicted with section 201.154 of the Act, which provides, "Notwithstanding any other provision of this chapter, the board may not adopt a process to certify chiropractors to perform manipulation under anesthesia." Tex. Occ. Code Ann. § 201.154 (West 2004).

5

a declaration under section 2001.038 of the government code that its order adopting the rule and preamble failed to provide an adequately reasoned justification because it "fails to explain why the Board's failure to include [MUA] as outside the scope of practice of chiropractic" does not violate statutory mandates. *See* Tex. Gov't Code Ann. § 2001.038 (West 2000). TMA also asserted an alternative constitutional challenge regarding chapter 201's scope-of-practice limitations, as well as a claim for injunctive relief against implementation of the rule.

TMA joined the Medical Board in the suit. The Chiropractic Board filed a plea to the jurisdiction contending that the TMA lacked standing and that "the issues relating to manipulation under anesthesia" were not ripe. In support, it attached a copy of its final rule. The district court denied the plea, and the Chiropractic Board thereafter appealed this order.

The Chiropractic Board brings a single issue contending that appellees' claims relating to MUA are not ripe for adjudication because the board "has not made a final decision on this issue." It emphasizes the statement in the rule's preamble that "the Board is still reviewing several issues regarding MUA and whether it is within the scope of practice of chiropractic in Texas." Unless and until it "promulgates a rule that finally concludes whether MUA is or is not within the scope of practice," according to the Chiropractic Board, "[j]udicial review of the Appellee's allegations relating to MUA will not be ripe," as they are "hypothetical" and "contingent" upon the further action of the board. These assertions are without merit.

"Ripeness, like standing, is a threshold issue that implicates subject matter jurisdiction." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). Ripeness concerns whether, at the time a lawsuit is filed, the facts have developed sufficiently such "that an

6

injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* A case is not ripe when its resolution depends upon contingent or hypothetical facts, or upon events that have not yet come to pass. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000).

Like other justiciability doctrines, ripeness derives from the constitutional prohibition against advisory opinions, which in turn stems from separation-of-powers principes. *Patterson*, 971 S.W.2d at 442. The ripeness doctrine also has a "pragmatic, prudential aspect" that aims to conserve "'judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes.'" *Id.* at 443 (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). Moreover, in the administrative law context, avoiding premature litigation over administrative determinations "prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while at the same time serving to 'protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *City of El Paso v. Madero Dev. & Constr. Co.*, 803 S.W.2d 396, 389-99 (Tex. App.—El Paso 1991, writ denied)).

However, there is nothing "hypothetical" or "abstract" about the appellees' claims. As all parties acknowledge, the Chiropractic Board actually promulgated a final scope-of-practice rule ostensibly in compliance with the legislature's mandates in its 2005 Sunset Bill. Appellees allege that the rule adopted by the Chiropractic Board did not comply with these legislative mandates or the APA. Appellees pled that chiropractors have been engaging in MUA, also attaching evidence

7

to that effect, and the Chiropractic Board does not dispute this fact.[5] In fact, the board acknowledged

in the rule's preamble that Texas chiropractors had been conducting MUA for years. In this factual

context, the Chiropractic Board expressly "elected not to disturb" this "status quo" in its rule, thereby

allowing the practice to continue. Appellees allege that by allowing chiropractors to continue

performing MUA, the rule violates chapter 201's explicit exclusion of "surgical procedures," as

defined in the 2005 amendments, from the scope of chiropractic practice, thereby intruding upon the

practice of medicine and causing them injury.[6] Appellees further allege that the Chiropractic Board

failed to provide a reasoned justification for crafting its rule in this manner. There is

nothing hypothetical or contingent about these disputes regarding the rule the Chiropractic Board

has adopted.[7]

We further note the longstanding principle that "[a]n administrative body cannot, by

reserving for itself the power to change a ruling, deprive the courts of jurisdiction to the detriment

---

[5] *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (unless a pled jurisdictional fact is challenged and conclusively negated, it must be taken as true for purposes of determining subject-matter jurisdiction).

[6] *See Texas Orthopaedic Assoc. v. Texas State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 718 n.1 (Tex. App.—Austin 2008, no pet. h.) (op. on reh'g) (citing with approval *Texas State Bd. of Podiatric Med. Exam'rs v. Texas Orthopaedic Assoc.*, 2004 Tex. App. LEXIS 10031, at *9-10 (Tex. App.—Austin 2004, no pet.) (recognizing that physicians and TMA had standing to complain of podiatrist board's rule that allegedly infringed on practice of medicine)).

[7] Although the Chiropractic Board had not raised the issue, amicus curiae, Professor Ron Beal of Baylor Law School, suggests that the district court would lack jurisdiction over appellees' challenge to any rule to the extent they asserted it under the UDJA and not APA section 2001.038. Appellees can remedy any jurisdictional defect in this regard by amending their pleadings. *See, e.g.*, *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004) (If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend).

of the parties injured by the ruling." *Glen Oaks Utils., Inc. v. City of Houston*, 340 S.W.2d 783, 786 (Tex. 1960). As appellees suggest, the Chiropractic Board's position is essentially that "no party or court has the authority to challenge what it has done" in its rule "so long as [the board] says that it is still studying the issue" and might later change the rule. We reject that view.

The Chiropractic Board also urges that the legislature vested in it "exclusive jurisdiction" to define the scope of practice of chiropractic. It acknowledges, however, that it "does not contend that it has authority or jurisdiction to decide the Appellees' claims." *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (explaining that exclusive jurisdiction exists when the legislature has delegated to an agency the sole power to make an initial determination in a dispute). Instead, it "claims only the authority and jurisdiction to make a decision on chiropractic MUA before the Appellees may challenge the validity of the decision under the Administrative Procedures Act." This assertion is ultimately a restatement of the Chiropractic Board's flawed ripeness arguments.

We overrule the Chiropractic Board's issue and affirm the district court's order denying its plea to the jurisdiction. We intend no opinion regarding the ultimate merits of appellees' claims.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed: November 26, 2008