*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN ENERGY CORPORATION;
CONSOLIDATED LAND COMPANY,
                    *Plaintiffs-Appellants,*

                                        No. 09-3864

        *v.*

ROCKIES EXPRESS PIPELINE LLC,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00284—Gregory L. Frost, District Judge.

Argued: August 5, 2010

Decided and Filed: September 29, 2010

Before: SUTTON and McKEAGUE, Circuit Judges; JONKER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark S. Stemm, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellants. Gregory D. Brunton, REMINGER CO., L.P.A., Columbus, Ohio, for Appellee. **ON BRIEF:** Mark S. Stemm, Alvin J. McKenna, Robert J. Stalter, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellants. Gregory D. Brunton, Paul N. Garinger, REMINGER CO., L.P.A., Columbus, Ohio, for Appellee. Vladimir P. Belo, BRICKER & ECKLER LLP, Columbus, Ohio, for Amicus Curiae.

---

[*]The Honorable Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

SUTTON, Circuit Judge.  This is round three in a land-use dispute between two coal companies and a pipeline company.  Round one:  over the coal companies' objection, the pipeline company obtained an order from the Federal Energy Regulatory Commission (FERC) permitting it to build a natural gas pipeline over the coal companies' mine, after which the coal companies appealed the order to the D.C. Circuit, where it is now pending.  Round two:  the pipeline company filed a condemnation action in federal court seeking a surface easement over the coal mine in return for compensating the coal companies for the costs of the easement.  Round three:  the coal companies filed an action in state court, later removed to federal court, to enjoin the building of the pipeline and to recover tort damages from the pipeline company caused by construction of the pipeline.  In this last action, the subject of today's appeal, the district court granted the pipeline company's motion to dismiss, holding that the plaintiffs' claims belonged before the courts handling the first two actions.  We affirm.

I.

*The FERC Proceeding.*  In 2007, the pipeline company filed an application with FERC to build a natural gas pipeline from Missouri to eastern Ohio.  *Rockies Express Pipeline LLC*, Nos. CP07-208-000, CP07-208-001, 123 FERC ¶ 61234, 2008 WL 2224961, at ¶ 1 (*FERC Certificate*).  At stake was a "certificate of public convenience and necessity," which is what an energy company needs to build a pipeline crossing state lines.  15 U.S.C. § 717f(c).  The coal companies opposed the certificate request, and FERC permitted them to intervene in the proceeding.  As the coal companies saw it, the pipeline would interfere with their business and endanger their mining operations.  FERC nonetheless granted the certificate in 2008.  FERC issued the certificate subject to several conditions, one of which required the pipeline company to "collaborate with [the coal companies] to develop a construction and operations plan" addressing "pipeline

integrity and operation" for the portion of the pipeline that runs over the mine. *FERC Certificate* ¶ 97, Appendix E ¶ 147.

The pipeline company submitted the required "construction and operations plan" and supplemental materials. The coal companies renewed their objections to the proposed pipeline route. FERC approved the plan and notified the pipeline company that it could begin constructing the pipeline. The coal companies requested a rehearing, which FERC granted in part and denied in part on July 15, 2009. The coal companies appealed FERC's final order to the D.C. Circuit, where it is currently pending. *See* Murray Energy Corp. v. FERC, No. 09-1207 (D.C. Cir. filed July 20, 2009).

*The Federal Court Condemnation Action.* A FERC certificate grants the holder the right to acquire any portion of the necessary right of way by eminent domain when the certificate holder cannot obtain permission through negotiations with the property owner. 15 U.S.C. § 717f(h). On June 6, 2008, the pipeline company filed a condemnation action in federal district court seeking to obtain easement rights along the right of way needed to construct the pipeline. *See* Rockies Express Pipeline LLC v. 4.895 Acres of Land, More or Less, in Butler County, Ohio, No. 2:08-CV-554, R.2 (S.D. Ohio June 6, 2008). The pipeline company eventually brought the coal companies into the action as defendants, and that action remains pending in the District Court for the Southern District of Ohio.

*The Conversion Action.* On April 10, 2009, the coal companies filed this action in state court in Ohio. Four days later, the pipeline company removed the action, involving diverse parties, to federal district court. The essence of the coal companies' position is that they face injuries from the construction of the pipeline that neither their FERC appeal nor the condemnation action can compensate. The district court disagreed, granting the pipeline company's motion to dismiss under Civil Rule 12(b)(6). This appeal followed.

II.

The coal companies seek four types of relief: (1) a declaration that they have the right to extract all of the mine's coal without the pipeline company's interference, requiring the pipeline company to "determine" and "commit to implement and pay for" those measures that "will eliminate the risk of imminent danger and disruptions" to mining, R.3 ¶ A; (2) an injunction halting pipeline construction until the pipeline company presents a mitigation plan adequate to avoid danger and disruptions; (3) an injunction requiring the company to develop a mitigation plan; and (4) a finding that the pipeline has converted the coal companies' property under state law—by "wrongfully interfer[ing] with [their] right to plan for [their] mining and [to] mine all of the coal," *id.* ¶ 70—and an award of compensatory damages, *id.* ¶ D. We give fresh review to the district court's decision to dismiss these claims as a matter of law and treat all of the coal companies' factual allegations as true. *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002).

A.

We can make short work of the coal companies' first three claims—all for equitable relief of one sort or another. At the heart of these claims lies the belief that FERC did not adequately consider the safety risks and business interruptions that the coal companies would face from the pipeline—including the fear that the pipeline would cause "imminent danger and disruptions" and "crippling financial losses." R.3 ¶¶ 50, 56. These fears may or may not be well-founded, but one thing is clear: They are not for us to resolve.

The Natural Gas Act sets forth a highly reticulated procedure for obtaining, and challenging, a FERC certificate to build an interstate pipeline. A party aggrieved by such an order may apply for rehearing before FERC. 15 U.S.C. § 717r(a). And no entity may seek judicial review of a FERC order unless it first sought rehearing from the agency. *Id.* Once FERC concludes the rehearing, the aggrieved party may petition for review either in the D.C. Circuit or in the circuit where the natural gas company is

located or has its principal place of business—in this instance, the Third or Fifth Circuit. 15 U.S.C. § 717r(b); R.2 at 3 (the pipeline company is a Delaware LLC and has its principal place of business in Texas).  The relevant court of appeals thereafter has "exclusive" jurisdiction "to affirm, modify, or set aside [FERC's] order in whole or in part."  15 U.S.C. § 717r(b); *see also* 15 U.S.C. § 717r(d)(1).  Exclusive means exclusive, and the Natural Gas Act nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court.

Yet it is precisely this exclusive jurisdiction that the coal companies wish to sidestep.  In the absence of their desired injunctive and declaratory relief, they say, the pipeline will interrupt their mining business and create safety risks.  FERC, however, evaluated those same claims and same types of claims in its original order granting the certificate. *See FERC Certificate* at ¶¶ 88–89 (addressing the coal companies' concern that the pipeline would cross the mine's underground entrance), ¶ 91 (addressing the coal companies' concerns that the proposed pipeline will "present numerous dangers to the pipeline's integrity" and "will interfere with the ongoing and future extraction of hundreds of millions of tons of coal"), ¶ 93 (addressing the steps the pipeline company had taken to prevent safety hazards and reiterating the certificate's requirements for "Rockies Express to consult with the mining companies prior to the start of construction" to ensure the route's safety), Appendix E ¶ 147 (addressing the requirement that the pipeline company collaborate with the coal companies to develop a "construction and operations plan" that "address[es] the primary concern of maintaining pipeline integrity and operation while not impeding the mining operation").

More, FERC addressed some of these same concerns again in reviewing the coal companies' rehearing petition. *See Rockies Express Pipeline LLC*, No. CP07-208-005, 128 FERC ¶ 61045, 2009 WL 2049170, at ¶ 31 ("[The coal companies] argue that the Commission erred in approving [the pipeline company's certificate] . . . because the plan is deficient, unsafe, and fails to protect [the coal companies'] mining operations."), ¶ 71 ("We believe . . . that construction and operation of the REX-East pipeline, as conditioned by our orders, will not constitute a significant safety risk.").  Proving that

FERC took the coal companies' concerns seriously, it imposed an additional condition on the pipeline company. To "ensure the safety of miners working" in the mine, FERC required the pipeline company, prior to any surface blasting, to "provide the Commission with proof that [the coal companies] and the Ohio Department of Natural Resources Office of Mine Safety have received actual notice of" the pipeline company's plans. *Id.* ¶ 85.

Now that FERC has issued its final order and now that the coal companies have appealed that order to the D.C. Circuit, the matter lies within that court's exclusive jurisdiction. 15 U.S.C. § 717r; *see also Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir. 1989). The coal companies thus may not seek what amounts to a second round of collateral review of FERC's order here. *See Williams Natural Gas Co.*, 890 F.2d at 262.

Resisting this conclusion, the coal companies argue that the FERC case concerns pipeline-*construction* matters while this one concerns *post*-pipeline-construction matters. Coal Companies' Br. at 13. That slices things too thinly—not unlike the Kentucky woodsman who cut a plank so many times that it had just one side. A case concerning construction matters may consider post-construction matters.

In truth, moreover, the coal companies do not argue to the contrary. In failing to address post-construction safety, the coal companies say that the FERC order leaves a "large hole in the FERC approval" that "threaten[s] [the coal companies] with irreparable damages." *Id*. at 13, 15. Yet the coal companies do not maintain that post-construction-safety matters exceed FERC's jurisdiction, only that FERC did not address them adequately. However "large" or small the mine-safety "hole" left by the FERC certificate, it remains a hole that must be filled or explained through the FERC proceeding, which retains exclusive jurisdiction over the issue. *See* 15 U.S.C. § 717r. Any problems with the FERC certificate must be addressed there.

B.

That leaves the coal companies' final claim for relief—their request for money damages for conversion.  The question here is not whether FERC has jurisdiction over these claims, which it does not.  *See* 15 U.S.C. § 717f (giving FERC only the power to grant certificates of public convenience and necessity, not the power to award related damages).  The question is whether these claims in one way or another are already before the district court in the condemnation action provided by section 7(h) of the Natural Gas Act.  15 U.S.C. § 717f(h).

No one doubts that the statutorily authorized condemnation action is designed to compensate the coal companies for the losses caused by construction of the pipeline.  That is the point of the action:  to allow the land to be put to a public purpose and to compensate the landowner for the use.  *Ohio Valley Adver. Corp. v. Linzell*, 152 N.E.2d 380, 384 (Ohio Ct. App. 1957) ("A land appropriation proceeding is . . . . an appropriation of physical property in which the value of the various interests in the property is determined and the proceeds applied accordingly."); *see* U.S. Const. amend. V.  The concern, rather, is that some of the coal companies' theories of damages may exceed the jurisdiction of the condemnation action.  We do not think so.

Federal courts entertaining FERC condemnation actions use "the law of the state in which the condemned property is located"—Ohio—"in determining the amount of compensation due."  *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*, 962 F.2d 1192, 1199 (6th Cir. 1992).  Under Ohio law, the landowner in an eminent domain action is entitled both to the value of the taken land and to "damages" to the "residue" of the property.  *City of Norwood v. Forest Converting Co.*, 476 N.E.2d 695, 700 (Ohio Ct. App. 1984).  Damages to the residue compensate for "any injury that may result to the remaining lands by reason of the construction of the proposed improvement," measured by the difference in the residue's fair market value before and after the taking.  *Id*.  A court determining fair market value should take into consideration "every element that can fairly enter into the question of value."  *Sowers v. Schaeffer*, 99 N.E.2d 313, 317 (Ohio 1951).  That approach gives the court in the

condemnation action jurisdiction over this cause of action.  *Cf. Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (en banc).

That the coal companies place a "conversion" label on their claim for money damages does not change matters.  What is it about a "conversion" claim that lies outside the scope of a condemnation action?  If the condemnation action will compensate for "any injury" to the residue, taking into account "every element" of the question of value, it may entertain the damages theory presented.

The pipeline company, notably, does not dispute the point.  At oral argument, it acknowledged that the condemnation court may award damages for *all* of the coal companies' injuries, no matter the label given to the theory of relief.  Oral Arg. at 39:17–39:57 (Court [to pipeline company's counsel]: "You're not conceding anything in terms of the merits of any of these theories of relief, the amounts of damages, types of damages. . . .  But as a matter of jurisdiction—the power of Judge Frost in that other action—he can *consider* them?  He [just has to] deal with what the rules of law are with respect to each theory?"  Pipeline company's counsel:  "Yea, he can consider them.").  And in its letter brief, it acknowledged the same thing.

All of this is not to reach the merits of the coal companies' claim.  Jurisdiction over a cause of action is one thing; the merits of it are another.  And most of the coal companies' contrary arguments merely conflate the distinction between a court's authority over a dispute and the proper resolution of that dispute.  The district court has authority to decide in the first instance whether the claims raise legally cognizable injuries or whether they are "merely speculative or contingent." *Masheter v. Blaisdell*, 282 N.E.2d 42, 45 (Ohio 1972).  To the extent the coal companies believe that the district court in the condemnation action has under-enforced Ohio law on this score, it can appeal the decision to us.  To the extent the coal companies believe that Ohio law fails fully to compensate these injuries in violation of the Fifth (and Fourteenth) Amendment, they can raise that claim in the district court and, if necessary, here.  And

to the extent any claims turn on speculative or future injuries, any order dismissing them would be without prejudice to raising them when the claims ripen into concrete, present injuries.

III.

For these reasons, we affirm.