

# NUMBER 13-20-00479-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE CITY OF PORT ISABEL,
TEXAS, JJ ZAMORA, AND
MARTIN CANTU,                                                      Appellants,

v.

BROWNSVILLE NAVIGATION
DISTRICT OF CAMERON
COUNTY, TEXAS,                                                     Appellee.

## On appeal from the 445th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

Appellants the City of Port Isabel, Texas (Port Isabel), JJ Zamora, and Martin Cantu[1] appeal the trial court's order sustaining appellee Brownsville Navigation District of Cameron County, Texas's (BND's) plea to the jurisdiction. By what we construe as three issues, appellants argue that: (1) the trial court erred by granting BND's plea to the jurisdiction because BND's immunity has been waived; (2) the trial court erred by concluding that appellants' suit was a collateral attack on the Federal Energy Regulatory Commission's (FERC) approval of BND's plans over which the trial court lacked jurisdiction; and (3) even if dismissal was appropriate, dismissal with prejudice was not. We affirm.

## I.    BACKGROUND

BND entered into lease agreements with several businesses that would construct and operate liquid natural gas (LNG) facilities on its property.[2] The parcels of land on which the facilities would be built are approximately one mile from Port Isabel. According to exhibits filed with the trial court by appellants, the plans to site and build the facilities began as early as March 2016 when one of the companies submitted its formal application to FERC to site and build the facility. After several years of environmental studies by FERC and the Texas Commission on Environmental Quality (TCEQ), FERC issued the final environmental impact statement in March 2019. On November 22, 2019, FERC approved the site plans for the LNG facilities, making the leases enforceable.

---

[1] Zamora and Cantu are both residents of Port Isabel. Zamora is the mayor of Port Isabel while Cantu is a city councilmember.

[2] The exact dates that the parties entered the leases are unknown; however, Port Isabel asserts that the leases were contingent on FERC's approval of the LNG plans.

On February 5, 2020, appellants filed their second amended petition and application for preliminary and permanent injunctions, asking the trial court to prohibit "BND from allowing any construction and operation of [LNG] facilities upon its premises."[3] BND received service and filed a notice of removal to the United States District Court for the Southern District of Texas on February 7, 2020. The federal court remanded the suit back to the state court on May 4, 2020, concluding that it did not have jurisdiction over appellants claims because the claims were based on state law. BND subsequently filed its plea to the jurisdiction and a later accompanying brief in support of its plea. Appellants filed their third amended petition and application for preliminary and permanent injunctions on May 19, 2020.

Appellants' third amended petition alleged that the LNG facilities "shall have a detrimental and negative impact upon the environment, including air, soil[,] and water quality for the inhabitants of the City of Port Isabel and the wildlife located in and around the Laguna Atascosa Wild[life] Refuge." Appellants further alleged that

> BND knew that the construction and subsequent operation of the [LNG] facilities by the various [LNG] businesses to whom [BND] leased its premises, would cause pollution and detrimentally impact the air, soil, water, inhabitants[,] and wildlife in and around the city limits of Port Isabel, Texas. [BND] knew or knows that the operation of the [LNG] facilities upon its premises would cause injury and damages to the air, soil, water, inhabitants[,] and wildlife in and around the city limits of Port Isabel, Texas. Despite this knowledge about the severe detrimental impact that the operation of the [LNG] facilities upon its premises would cause, [BND] continued to, and still continues, to allow its premises to be used in a manner which shall cause irreparable harm to the air, soil, water, inhabitants[,] and wildlife in and around the city limits of Port Isabel, Texas.

---

[3] Appellants filed their original petition and application for preliminary and permanent injunctions on January 27, 2020, and first amended petition and application for preliminary and permanent injunctions on January 30, 2020; however, appellants did not serve BND with either version.

Alternatively, [BND] has intentionally acted to cause harm to the air, soil, water, inhabitants[,] and wildlife in and around the city limits of Port Isabel, Texas by proce[e]ding with its lease to the [LNG] businesses for the purpose of [LNG] operations upon [BND]'s premises. [BND] has intentionally acted to cause harm to the air, soil, water, inhabitants[,] and wildlife in and around the city limits of Port Isabel, Texas because it has actual knowledge of the pollution and environmental devastation that shall occur when the [LNG] businesses conduct their respective liquified natural gas operations upon BND's premises.

According to appellants,

[o]nce Texans and others discover that the chemicals from the [LNG] facilities like benzene, formaldehyde[,] and mercury are in the air, water, fish[,] and soil, they will avoid Port Isabel and seek out other places to fish, visit, vacation, shop, eat[,] and work. The [LNG] facilities' operations will devastate the Port Isabel economy.

BND[,] through its leases with the liquified natural gas businesses[,] has created a condition that is subversive of public health, and that constitutes an obstruction of public rights.

Appellants attached and incorporated by reference testimony from their expert, David Weeks, a licensed engineer who is board certified in hazardous waste management and industrial hygiene. According to Weeks,

[a]ir contaminants emitted from the [f]acility will be deposited into the Laguna Atascosa National Wildlife Refuge [(Refuge)] and other areas within the corporate and [extra-jurisdictional] boundaries of [Port Isabel]. . . . Heavy metals and semi-volatile organic compounds . . . may be present as or attach to particulate matter . . . . Once deposited into the environment[,] the air contaminants can be taken up into the food chain where they can cause toxic responses in higher trophic levels of the food web (i.e.[,] mammals and birds), or have direct adverse effects on the ecosystem itself (invertebrates).

For example, the facility may emit cadmium, mercury, and polycyclic aromatic hydrocarbons (PAHs). . . . Some fraction of these air contaminants will likely be deposited in the environment in a pattern similar to that shown

in Exhibit 34[4] because they may be present as or attached to fine particles from the combustion process.

. . . .

The analysis showed that the [a]pplicant's emissions could result in nitrogen and sulfur deposition to the environment that exceed the [Deposition Analysis Threshold] based air concentrations for nitrogen and sulfur, and therefore the applicant's emissions could result in the deposition of nitrogen and sulfur that could cause adverse impacts to the environment of the [Refuge] and the areas of [Port Isabel] . . . .

. . . .

[I]t is not known if the permit conditions are protective of human health for cancer risk.

Weeks expressed repeated concerns that the environmental and health studies performed as part of the permitting process did not consider all the necessary information to make an adequate conclusion on safety to both human and environmental entities near the plants.

Appellants asserted multiple causes of action including gross negligence and nuisance.[5] Appellants argued that BND's actions constituted gross negligence because "allowing [LNG] operations upon its premises[,] when viewed objectively from BND's standpoint, involves an extreme degree of risk to the air, water, soil, inhabita[n]ts[,] and wildlife in and around the city limits of Port Isabel." Appellants went on to allege that "BND had actual, subjective awareness of the risks involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of [appellants] and others."

---

[4] Exhibit 34 does not appear in the record.

[5] Appellants listed three separate nuisance actions: (1) public and private nuisance; (2) "intentional nuisance" with strict liability for ultrahazardous activity; and (3) nuisance that amounts to a taking of appellants' property.

According to appellants, BND's conduct of leasing the land to the LNG businesses "is the proximate cause of [appellants'] injuries and damages."

Appellants alleged that strict liability applies to BND's conduct because "the construction and operation of the [LNG] facilities upon BND's premises [are] an abnormally dangerous activit[ies]" in that the facilities will emit "noxious and toxic chemicals" and, in the event of a fire, LNG burns at approximately 3,500 degrees Fahrenheit and is extremely difficult, if not impossible, to extinguish.

Finally, appellants argued that "the construction and operation of the [LNG] facilities upon BND's premises . . . constitutes a forthcoming and imminent taking of [appellants'] real property in violation of . . . the Texas Constitution." According to appellants, "BND intentionally acted and entered into the lease of its premises to the various [LNG] businesses when BND knew or should have known that the operation of the [LNG] facilities will result in the contamination of [appellants'] air, water, and soil with emissions and chemicals harmful to [appellants]." In the alternative, appellants alleged that BND's act of leasing its property to the LNG companies constituted a proprietary act for which BND does not enjoy governmental immunity.

BND filed a plea to the jurisdiction and included five exhibits. The first three exhibits consisted of FERC's order granting authorization to site, construct, and operate LNG facilities for each proposed lease. BND also included appellants' petition for review of FERC's authorizations before the United States Court of Appeals for the District of Columbia Circuit. Finally, BND included an affidavit from Eduardo Campirano, port director and chief executive officer at the Port of Brownsville.

In its plea, BND argued that, pursuant to the Natural Gas Act (NGA), FERC has exclusive authority to approve or deny an application for the siting, construction, and operation of an LNG facility. *See* 15 U.S.C. § 717b(e)(1). BND pointed out that several interested parties, including appellants, were provided an opportunity to oppose the approval of the forthcoming facilities by providing evidence and argument to FERC as to why the facilities should not be constructed. BND argued that appellants' state court suit constituted an impermissible collateral attack on FERC's authority, particularly because none of the entities had begun construction of the facilities and thus appellants have suffered no injuries.

BND also argued that, as a political subdivision of the State of Texas, it enjoyed governmental immunity, which had not been waived. BND further asserted that the decision to lease the property to the LNG businesses constituted a discretionary act for which there is no waiver of governmental immunity, additionally arguing that there is no waiver under the Texas Tort Claims Act (TTCA). In response to appellants' assertion that leasing the land to the LNG businesses was a proprietary function, BND argued that a navigation district is "entirely governmental in function," not proprietary.

According to BND, appellants' suit affirmatively negated jurisdiction "because the pleadings admit that (i) [BND] is merely the landlord, (ii) the LNG [facilities] have not been constructed, much less become operational, and (iii) no damages to [appellants] have actually resulted from any conduct of [BND]."

Appellants responded to BND's plea, attaching thirteen exhibits to their response. Appellants argued that a license or permit from a governmental entity does not provide a

shield from liability for injuries that arise from activities under that license or permit. Appellants claimed they were "not attacking the propriety of the FERC and TCEQ's orders at all." Rather, they were "asserting common law claims against [BND] to enjoin the pollution, injuries[,] and damages that will befall [appellants] arising and emanating from BND's premises given the lease agreements." In response to BND's point that appellants have not yet suffered damages, appellants argued that the relief sought is appropriate regarding the timing because the injuries they will suffer are imminent. Appellants urged the trial court to deny BND's plea because, taking all assertions in their petition as true, they sufficiently set out the necessary elements for each of their claims as well as established a waiver of BND's governmental immunity.

After a non-evidentiary hearing, the trial court granted BND's plea, concluding that "FERC has exclusive jurisdiction and authority to approve or not approve LNG siting, construction[,] and operations facilities to the exclusion of state and local authorities, including state courts." The trial court determined that granting appellants' requests for preliminary and permanent injunctions "would effectively set aside the FERC [o]rders." The trial court added that appellants' "pleadings and exhibits, as well as the representation of facts made at the hearing, clearly and undeniably show that no harm or injury has yet been done to any of the [appellants], to any person or animal or plant, or to the land or the environment." Finally, the trial court concluded that appellants "failed to meet their burden that BND's immunity from suit has been waived." The trial court dismissed appellants' suit with prejudice. This appeal followed.[6]

---

[6] After this case was submitted for decision, this Court abated the case and asked the parties to

8

## II. STANDARDS OF REVIEW

### A. Exclusive Federal Jurisdiction

When Congress establishes exclusive federal jurisdiction, "only the specified federal instrumentalities have jurisdiction of the matter, irrespective of the law to be applied." *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 427 (Tex. 2005) (per curiam) (quoting *Chappell v. SCA Servs., Inc.*, 540 F. Supp. 1087, 1095 (C.D. Ill. 1982) (contrasting exclusive jurisdiction with preemption, under which "federal substantive law supplants state law but absent other provisions both state and federal courts have concurrent jurisdiction of actions arising under that law."). "[W]hether an agency has exclusive jurisdiction is a question of law we review de novo." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002). Similarly, whether federal courts have exclusive jurisdiction is a question of law which we review de novo. *Stiles v. Mem'l Hermann Healthcare Sys.*, 213 S.W.3d 521, 525 (Tex. App.—Houston [1st. Dist.] 2007, pet. denied).

---

provide an update regarding the federal appeal and to provide us with a copy of the order and opinion. The parties complied and we further requested that the parties brief this Court on whether the circuit court's ruling implicated mootness, which would deprive this court of subject matter jurisdiction. *See Ward v. Lamar Univ.*, 484 S.W.3d 440, 450–51 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("[A]ppellate courts have a duty to assess their own jurisdiction sua sponte."); *see also City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.—Dallas 2010, no pet.) ("An appellate court is prohibited from deciding a moot controversy.").

The federal court of appeals granted appellants' petitions for review as to whether FERC's "analyses of the projects' impacts on climate change and environmental justice communities were deficient" under the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA). *Vecinos para el Bienestar de la Comunidad Costera v. Fed. Energy Reg. Comm'n*, 6 F.4th 1321, 1331 (D.C. Cir. 2021). However, the court declined to vacate FERC's orders, reasoning that FERC "is likely to remedy any deficiencies in its orders on remand" and that "vacating the orders would needlessly disrupt completion of the projects." *Id.* at 1332. In their supplemental briefing, the parties agree that, because the D.C. Circuit Court of Appeals did not vacate the permits to site, construct, and operate the LNG facilities, this appeal is not moot. We agree.

9

**B.      Ripeness**

"Ripeness" is a doctrine that considers "whether, at the time a lawsuit is filed, the facts have developed sufficiently such 'that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 270 S.W.3d 777, 781 (Tex. App.—Austin 2008, no pet.) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). "Ripeness is an element of subject matter jurisdiction." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "[R]ipeness derives from the constitutional prohibition against advisory opinions, which in turn stems from separation-of-powers princip[l]es." *Tex. Bd. of Chiropractic Exam'rs*, 270 S.W.3d at 781. In other words, courts lack subject matter jurisdiction over claims that are not yet ripe. *Mayhew*, 964 S.W.2d at 928. "A case is not ripe when its resolution depends upon contingent or hypothetical facts, or upon events that have not yet come to pass." *Tex. Bd. of Chiropractic Exam'rs*, 270 S.W.3d at 781. Because ripeness is a component of subject matter jurisdiction, whether a claim is ripe "is a legal question subject to de novo review that a court can raise sua sponte." *Mayhew*, 964 S.W.2d at 928.

### III.      APPLICABLE LAW

The NGA "creates a consolidated regulatory process for approving LNG facilities that maintains the role of federal agencies and, in circumscribed areas, state agencies." *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 462 (1st Circ. 2009); *see* 15 U.S.C. §§ 717–717z. The NGA provides FERC with "exclusive authority to approve or deny an application for the siting, construction, expansion, or

10

operation of an LNG terminal." 15 U.S.C. § 717b(e)(1). Thereafter, an interested party may seek review of the permit through administrative procedures within FERC. *Id.* § 717r(a). Once FERC has concluded the review hearing, the aggrieved party may seek review before the D.C. Circuit Court of Appeals or the court of appeals for the circuit in which the LNG facility is located, which have exclusive jurisdiction to affirm, modify, or set aside FERC's order in whole or part. *Id.* § 717r(b).

FERC and the respective circuit courts' exclusive jurisdiction does not extend to state common law claims that arise out of the operation of LNG facilities. *Pan Am. Petroleum Corp. v. Superior Ct. of Del. In & For New Castle Cnty.*, 366 U.S. 656, 664–66 (1961) (holding the NGA does not eliminate a state court's jurisdiction for common-law contract claims); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 393 (2016) (holding Securities Exchange Act did not eliminate a state court's jurisdiction where "[plaintiff's] claims sought relief under state law[,] and none necessarily raised a federal issue"). "Exclusive means exclusive, and the [NGA] nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court." *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Circ. 2010).

## IV. ANALYSIS

### A. Exclusive Jurisdiction

Among their issues presented, appellants argue that the trial court erred by granting BND's plea to the jurisdiction because the NGA does not bar state law claims

11

against BND. Because we find this issue to be dispositive, we address it first. *See* TEX. R. APP. P. 47.4.

Appellants cite *FPL Farming Ltd. v. Environmental Processing Systems, L.C.*, arguing that the TCEQ and FERC permits do not shield BND from tort liability for injuries caused while operating under those licenses.[7] 351 S.W.3d 306, 310 (Tex. 2011) ("As a general rule, a permit granted by an agency does not act to immunize the permit holder from civil tort liability from private parties for actions arising out of the use of the permit."). In *FPL Farming*, the court concluded that FPL Farming could maintain a suit for trespass against Environmental Processing Systems (EPS), despite EPS's permit allowing it to construct and operate two deep wastewater injection wells next to FPL Farming's property. *Id.* at 308. FPL Farming alleged that EPS's operations caused wastewater to migrate onto FPL Farming's property, contaminating its water supply. *Id.* at 307. The court explained that a permit is a "negative pronouncement" that removes government-imposed barriers to a particular activity rather than granting affirmative rights. *Id.* at 310–11. Thus, EPS's permit merely allowed the activity but did not shield it from liability for damages caused by the activity. *Id.* at 310, 314.

Appellants additionally argue that "[t]he only way the trial court could be correct, that the federal regulatory scheme or FERC's orders bar [appellants'] claims via exclusive jurisdiction, is if there existed federal preemption of [appellants'] claims in this action."

---

[7] We note that FERC's orders granting authorization to site, construct, and operate LNG facilities were not granted to BND, but rather to the various companies that would be constructing and operating the LNG facilities. Further, there is no allegation or evidence that BND intended to build or operate an LNG facility itself.

12

Appellants cite *Pan American Petroleum Corp.* as support for their assertion that FERC and the federal appellate courts do not have exclusive jurisdiction over state law claims. *See* 366 U.S. at 664–66. In *Pan American*, the United States Supreme Court held that FERC and the federal courts' exclusive jurisdiction under the NGA did not deprive state courts of subject matter jurisdiction over a natural gas pipeline company's state-law contract claim against Pan American. *Id.* at 662–63.

We find both *Pan American and FPL Farming* to be inapposite. In the present case, appellants do not seek to recover damages, but to enjoin BND temporarily and permanently from leasing its property to the LNG businesses and to prevent the "siting, construction, expansion, or operation of an LNG terminal," a matter exclusively reserved for FERC and federal circuit courts. *See* 15 U.S.C. § 717b(e)(1).

In *Pan American*, the Court held that whether exclusive jurisdiction exists "depend[s] on the particular claims a suitor makes in a state court—on how he casts his action." 366 U.S. at 662. Although the NGA does not strip state courts of subject matter jurisdiction over common law state claims, a plaintiff may not simply assert state law claims to act as a collateral attack on FERC's statutory authority. *See Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir. 1989) ("[T]he prohibition on collateral attacks applies whether the collateral action is brought in state court."). Here, although appellants have alleged various causes of action based in common law tort, they exclusively seek to undo the authority granted by FERC. *See id.* In other words, appellants attempt to use artful pleading to utilize state court jurisdiction to usurp FERC's exclusive authority. *See Williams Nat. Gas*, 890 F.2d at 262.

13

Appellants' claims amount to an impermissible collateral attack on FERC's exclusive authority to approve or deny an application to site, construct, expand, or operate an LNG facility. *See id.* Appellants' claims may be artfully pleaded as state law claims, but they seek to defeat the very authority provided to FERC and the respective courts by requesting temporary and permanent injunctions prohibiting the LNG facilities from being sited, built, and operated by the lessees. *See id.*; *Pan Am. Petroleum Corp.*, 366 U.S. at 662. Further, appellants' claims that the operation of LNG facilities will lead to widespread damage to Port Isabel, the surrounding area, and its inhabitants, were presented to and considered by FERC during the permit application process and reviewed by the D.C. Circuit Court of Appeals. *See Williams Nat. Gas*, 890 F.2d at 264. The collateral nature of appellants' attack is further evidenced by their pleadings, which suggest that incomplete or insufficient environmental studies by FERC and TCEQ, led to erroneous approval. *See id.*

Lastly, appellants assert that the Southern District of Texas's holding that "[t]he NGA does not preempt state common law claims" further demonstrates appellants' position that the trial court erred by concluding that it lacked jurisdiction. However, this case does not implicate preemption; rather, it implicates exclusive jurisdiction. *See Mills*, 157 S.W.3d at 427. Further, "subject matter jurisdiction cannot be conferred by a prior decision in the case." *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 337 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (concluding that the "law of the case doctrine" cannot confer subject matter jurisdiction and does not limit a court's obligation to ascertain its own subject matter jurisdiction).

A plaintiff cannot use artful pleading to circumvent exclusive jurisdiction and engage in a collateral attack on a federal agency's expressed authority. *See Williams Nat. Gas*, 890 F.2d at 262; *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010) (reaffirming principal that artful pleading does not alter the underlying nature of a claim being made as it relates to healthcare liability claims). Accordingly, we conclude the trial court did not err in granting BND's plea to the jurisdiction.

## B. Dismissal with Prejudice

Appellants argue that the trial court erred by dismissing their claims with prejudice because "[Port Isabel] would be forever foreclosed [of] the opportunity to bring suit against BND for its later wrongful acts and/or omissions." Appellants further assert that they should be provided an opportunity to amend their pleadings to include sufficient facts to cure any jurisdictional defects. However, the right to amend pleadings only exists when the jurisdictional defect can be cured through pleadings. *See Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("In general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect."); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867–68 (Tex. 2002) (concluding plaintiff did not have right to amend pleadings where "[t]he pleaded facts and the evidence . . . demonstrate that it is impossible for [the plaintiff] to amend the pleadings to invoke jurisdiction"). Here, the jurisdictional defect—exclusive federal jurisdiction—cannot be cured through amended pleadings. *See Ramirez*, 864 S.W.3d at 867–68. As such, the trial court did not err when it dismissed appellants' suit with prejudice.[8]

---

[8] While we are dismissing appellants' claims pertaining to the yet built LNG facilities with prejudice,

15

## C. Summary

The trial court did not err when it concluded that appellants' suit amounted to an impermissible collateral attack on FERC's exclusive jurisdiction and dismissed their claims with prejudice. Because we uphold the trial court's order under exclusive jurisdiction, we do not need to consider appellants' remaining issues that BND waived immunity or that the trial court failed to take as true all evidence favorable to appellants and indulge every reasonable inference in their favor. *See* TEX. R. APP. P. 47.4.

## V. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
29th day of November, 2022.

---

our disposition should not be construed as extending to possible future claims that could arise following the facilities' construction.

16