In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-08-00083-CV


____________________



FPL FARMING LTD., Appellant



V.



ENVIRONMENTAL PROCESSING SYSTEMS, L.C., Appellee






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CV71974






 OPINION


 This case involves a nonhazardous, wastewater injection well operated by
Environmental Processing Systems, L.C. ("EPS") and located near two tracts of land owned
by FPL Farming Ltd. ("FPL"). FPL sued EPS, and the case was tried before a jury, which
found against FPL on all of its submitted causes of action: trespass, negligence, and unjust
enrichment. On appeal, FPL raises four issues: (1) the trial court improperly denied FPL's
motion for a directed verdict, (2) the jury charge's instructions on trespass misplaced the
burden of proving lack of consent, (3) the charge erroneously failed to instruct the jury that
injury is not a necessary element of trespass, and (4) the evidence supporting the jury's
verdict is factually insufficient. Because we find that an actionable trespass, under the
circumstances presented here, did not occur, and that the evidence is factually sufficient to
support the jury's verdict, we affirm. 

I. Background


 In 1996, the Texas Natural Resource Conservation Commission (1) ("Commission")
granted permits to EPS for construction in Liberty County of two wells that would inject
commercial, nonhazardous industrial waste approximately 7,350 to 8,200 feet below the
surface into the Frio saltwater formation. FPL Farming, Ltd. v. Texas Natural Resource
Conservation Com'n, No. 03-02-00477-CV, 2003 WL 247183, at *1(Tex. App.-Austin Feb.
6, 2003, pet. denied). The proposed wells were to be located near two tracts of land owned
by FPL. Id. 

 Under Commission rules, an injection well permit application must contain ten-year
and thirty-year projections that predict how far the injected material will migrate from a well.
Id. After receiving notice of EPS's applications and learning that the underground waste
plume from the proposed wells was projected to reach the subsurface of its closer property
within ten years, FPL requested a contested case hearing in 1996 to oppose the permit
applications. Id. Ultimately, FPL settled with EPS for $185,000 to avoid the delay and the
expense of a hearing." Id. FPL then withdrew its hearing request, and the Commission
granted the permits. Id.

 In 1999, when EPS sought to amend its permits to increase the allowed injection rate,
FPL requested and received a contested case hearing. Id. The administrative law judge
("ALJ") who presided at the hearing and another ALJ who read the record recommended that
the Commission grant the amendments. Id. The ALJs also proposed certain findings of fact
and conclusions of law, including: (1) the waste plume would radiate 3,021 feet from the
well facility after ten years, assuming the maximum injection rate; (2) FPL had no absolute
right to exclude others from the deep subsurface below its property; (3) FPL did not own the
oil and gas mineral interests associated with the land in question; (4) FPL's existing rights
would not be impaired by the amended permits; and (5) operation of the wells under the
amended permits would not be an unconstitutional taking. Id. The Commission adopted the
ALJs' findings of fact and conclusions of law and granted EPS's application for the amended
permits. Id.

 FPL appealed the Commission's order to the Travis County district court, which
affirmed the agency's decision. Id. at *2. On appeal to the Austin Court of Appeals, FPL
contended: (1) the Commission exceeded its statutory authority by granting the amended
permit when it knew the waste plume from EPS's well would migrate into the deep
subsurface of FPL's property, and (2) the grant of the amended permits allowed a permanent
physical invasion of FPL's property and was an unconstitutional taking. Id. In 2003, the
Austin Court of Appeals affirmed the district court's judgment. Id. at *1. The Austin Court
assumed, but did not decide, that FPL had "existing rights" in the deep subsurface beneath
its land and further noted that if the waste plume migrated to the subsurface of FPL's
property and caused harm, FPL could seek damages from EPS. Id. at **3, 5 (citing Tex.
Water Code Ann. § 27.104 (Vernon 2000)). (2)

 In 2006, FPL sued EPS in Liberty County seeking injunctive relief and alleging
various causes of action, including trespass, unjust enrichment, and negligence. The jury
rejected FPL's claims for trespass, unjust enrichment, and negligence, which constituted all
of the theories pled by FPL that were submitted to the jury. FPL then timely filed its notice
of appeal.




II. Trespass



 Three of FPL's four issues-one, two, and three-complain of errors related to FPL's
trespass claim. Issue one contends the trial court should have granted FPL a directed verdict
on consent. Issue two asserts the jury charge erroneously required FPL to prove that it had
not consented. Issue three argues the trial court erred by failing to instruct the jury that injury
is not a necessary element of trespass.

 FPL maintains that "[t]he question in this case is whether FPL Farming owns the
portion of the Frio formation beneath its land and the groundwater the formation contains."
FPL also argues that "[t]he Texas Water Code expressly recognizes that landowners own the
groundwater beneath their property." See Tex. Water Code Ann. § 36.002 (Vernon 2008). (3)
 
 EPS contends that the trial court's judgment that FPL take nothing is proper because
there is no established cause of action to complain about deep subsurface migration of
injected fluids. EPS further argues that its activities pose no threat to or effect upon any
neighboring surface, subsoil, or percolating groundwater. 

 As an initial matter, we must consider whether FPL has a trespass claim when the
facts demonstrate that the Commission approved an amended permit allowing EPS to inject
wastewater into the Frio formation and when information before the Commission showed
that EPS's waste plume was projected to migrate into the deep subsurface of the formation
underlying FPL's property. As to claims alleging a subsurface trespass, the Texas Supreme
Court recently explained:

 [F]rom the ancient common law maxim that land ownership extends to the sky
above and the earth's center below, one might extrapolate that the same rule
should apply two miles below the surface. But that maxim-cujus est solum
ejus est usque ad coelum et ad inferos-"has no place in the modern world."
Wheeling an airplane across the surface of one's property without permission
is a trespass; flying the plane through the airspace two miles above the
property is not. Lord Coke, who pronounced the maxim, did not consider the
possibility of airplanes. But neither did he imagine oil wells. The law of
trespass need no more be the same two miles below the surface than two miles
above.


 Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 11 (Tex. 2008) (quoting
United States v. Causby, 328 U.S. 256, 260-61 & n.5, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946))
(footnotes omitted). 

 Significantly, the Garza Court recognized the import of a state agency's authorization
of competing uses of land by reiterating the precedential value of Railroad Commission of
Texas v. Manziel, 361 S.W.2d 560, 568-69 (Tex. 1962). Garza, 268 S.W.3d at 12. In
Manziel, the Court concluded that a secondary recovery operation involving the subsurface
injection of salt water did not cause a trespass when the water migrated across property lines,
in light of the Railroad Commission's approval of the operation. Manziel, 361 S.W.2d at
568-69. The Garza Court also observed that thirty years after Manziel, the Texas Supreme
Court had decided Geo Viking, Inc. v. Tex-Lee Operating Company and had concluded that
a subsurface operation causing fractures in formations underneath another's land was a
trespass. Garza, 268 S.W.3d at 12 (citing Geo Viking, Inc. v. Tex-Lee Operating Co., 839
S.W.2d 797 (Tex. 1992) (per curiam op. withdrawn on reh'g)). However, the Garza Court
explained that the original Geo Viking opinion was withdrawn on rehearing and that the Geo
Viking Court's opinion issued on rehearing expressly did not decide the trespass issue. Id.
(citing Geo Viking, 839 S.W.2d at 798). (4)
 Manziel, thus, has not been overruled, and we
conclude that the facts presented there are analogous to those in the case before us. 

 In Manziel, the Texas Supreme Court explained:

 The subsurface invasion of adjoining mineral estates by injected salt water of
a secondary recovery project is to be expected, and in the case at bar we are
not confronted with the tort aspects of such practices. Neither is the question
raised as to whether the Commission's authorization of such operations throws
a protective cloak around the injecting operator who might otherwise be
subjected to the risks of liability for actual damages to the adjoining property;
rather we are faced with an issue of whether a trespass is committed when
secondary recovery waters from an authorized secondary recovery project
cross lease lines.


Manziel, 361 S.W.2d at 566-67. 

 The Manziel Court considered public policy reasons as well as societal and industry
interests in making its determination:

 The orthodox rules and principles applied by the courts as regards surface
invasions of land may not be appropriately applied to subsurface invasions as
arise out of the secondary recovery of natural resources. If the intrusions of
salt water are to be regarded as trespassory in character, then under common
notions of surface invasions, the justifying public policy considerations behind
secondary recovery operations could not be reached in considering the validity
and reasonableness of such operations. See: Keeton and Jones: 'Tort Liability
and the Oil and Gas Industry II,' 39 Tex. Law Rev. 253 at p. 268. Certainly,
it is relevant to consider and weigh the interests of society and the oil and gas
industry as a whole against the interests of the individual operator who is
damaged; and if the authorized activities in an adjoining secondary recovery
unit are found to be based on some substantial, justifying occasion, then this
court should sustain their validity.

Id. at 568. 

Explaining that the rules of trespass were "technical" and should not affect the validity of the
Railroad Commission's orders, the Manziel Court held:

 We conclude that if, in the valid exercise of its authority to prevent waste,
protect correlative rights, or in the exercise of other powers within its
jurisdiction, the Commission authorizes secondary recovery projects, a trespass
does not occur when the injected, secondary recovery forces move across lease
lines, and the operations are not subject to an injunction on that basis. 


Id. at 568-69. As the Garza Court noted, the Manziel decision "relied heavily on the fact
that the [Railroad] Commission had approved the operation." Garza, 268 S.W.3d at 12. (5) 

 In this case, EPS obtained the approval of the Texas Natural Resource Conservation
Commission (6) for its wastewater injection well. FPL Farming, 2003 WL 247183, at *1. 
Pursuant to Chapter 27 ("Injection Wells") of the Texas Water Code, the Commission is
authorized to issue permits for injection wells and is charged with doing so "for the benefit
of the state and the preservation of its natural resources." Tex. Water Code Ann. §§
27.011-.012 (Vernon 2008). The policies and purposes of the Injection Well Act are stated
in section 27.003:

 It is the policy of this state and the purpose of this chapter to maintain
the quality of fresh water in the state to the extent consistent with the public
health and welfare and the operation of existing industries, taking into
consideration the economic development of the state, to prevent underground
injection that may pollute fresh water, and to require the use of all reasonable
methods to implement this policy. 


Id. §§ 27.001, 27.003.

 Thus, just as the Railroad Commission considered both public and private interests
in allowing the subsurface injection of salt water as described by the Texas Supreme Court
in Manziel, the Commission in this case also was required to consider various interests. The
doctrine of common law trespass is only one of the factors that it might consider. Based on
the reasoning applied by the Texas Supreme Court in Manziel, we conclude that under the
common law, when a state agency has authorized deep subsurface injections, no trespass
occurs when fluids that were injected at deep levels are then alleged to have later migrated
at those deep levels into the deep subsurface of nearby tracts. Because we conclude that no
actionable common law trespass has occurred, we overrule issues one, two, and three. 

III. Issue Four


 In issue four, FPL contends the jury's findings rejecting its claims for trespass,
negligence, and unjust enrichment are against the great weight and preponderance of the
evidence. Because we hold that no actionable trespass occurred under the circumstances
presented in this case, FPL's argument in issue four with respect to trespass is moot. See
generally Tex. R. App. P. 47.1.

 We next consider FPL's argument that the evidence is factually insufficient to support
the jury's adverse finding on unjust enrichment. In a jury trial, a complaint that the evidence
is factually insufficient must be raised in a motion for new trial in order to preserve the
complaint for appellate review. Tex. R. Civ. P. 324(b)(2). FPL's motion for new trial,
however, did not assert that the jury's finding on unjust enrichment was supported by
factually insufficient evidence. Because FPL failed to preserve this complaint for our
review, we do not consider FPL's factual sufficiency argument to the extent FPL now, for
the first time, seeks to challenge the jury's unjust enrichment finding. See id. 

 For purposes of appeal, FPL did perfect its claim that the jury's rejection of its claim
of negligence was against the greater weight and preponderance of the evidence. When, as
is the case here, an appellant challenges the factual sufficiency of the evidence supporting
an adverse finding on an issue for which he had the burden of proof, the appellant must show
"the adverse finding is against the great weight and preponderance of the evidence." Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). 

 To prevail on its negligence claim, FPL had to prove the existence of a legal duty, a
breach of that duty, and damages proximately caused by the breach. See D. Houston, Inc. v.
Love, 92 S.W.3d 450, 454 (Tex. 2002). Thus, among the other elements of its negligence
cause of action, FPL had to show it was injured by EPS's actions. See generally A.B.F.
Freight Sys., Inc. v. Austrian Import Serv., Inc., 798 S.W.2d 606, 615 (Tex. App.-Dallas
1990, writ denied) (recognizing that establishing the fact of damage is a prerequisite to
establishing the amount of damages to be awarded). FPL's brief, however does not explain
how the greater weight and preponderance of the evidence proved that it was injured.

 In addition, FPL did not request that an issue on injury be submitted to the jury.
Further, prior to judgment, FPL did not ask the trial court to make any findings of fact or
conclusions of law. See Tex. R. Civ. P. 279 (providing in part that when one or more
elements of a ground of recovery are omitted from the charge, and there is factually sufficient
evidence to support a finding thereon, the trial court, at the request of either party before
judgment is rendered, may make written findings on such omitted element). 

 Because injury was an element omitted from the jury charge, and no request was made
to include it, no objection was made to its exclusion, and no written findings were made by
the trial court, we must deem that the omitted element on the question of injury was found
by the trial court in a manner that supports the judgment. See Tex. R. Civ. P. 279 (providing
that omitted elements of a claim "shall be deemed found by the court in such manner as to
support the judgment"); TRI v. J.T.T., 162 S.W.3d 552, 558 (Tex. 2005). (7) Therefore, there
is an implied finding that EPS did not cause an injury to FPL. See Tex. R. Civ. P. 279.

 In this case, the evidence reveals that the question of whether FPL had been injured
was one of the central issues in the parties' dispute. Even if we were to assume for purposes
of argument that FPL proved duty and breach of duty, the great weight and preponderance
of the evidence does not show that FPL suffered injury as a result of EPS's injections of
waste at a deep level on its own property even if the waste had migrated at those deep levels
to neighboring tracts. FPL's corporate representative testified that the "highest and best use"
for the property was as a rice field, the way it was being used. FPL does not contend that
EPS's actions have interfered with FPL's use of the property as a rice field. Further, FPL's
expert testified that there is no evidence that the wastewater has migrated to the surface of
the property, that EPS's neighbors are not in jeopardy of waste coming into their subsoil or
soil, and that the injection well is not a danger to drinking water. FPL's corporate
representative testified that FPL had not tried to sell the property. Moreover, FPL argues on
appeal that it did not have to show injury to be entitled to recover under its trespass theory,
and the actions of EPS underlying FPL's trespass claim are the same ones that are the basis
for its negligence claim.

 Thus, in its appeal, FPL has failed to demonstrate that the trial court's implied finding
rejecting its claim of injury is contrary to the greater weight and preponderance of the
evidence. See Francis, 46 S.W.3d at 242. Therefore, to the extent FPL's appeal challenges
the factual sufficiency of the evidence to support the judgment rejecting its claim for
negligence, its argument on that ground is also overruled. 

 Having considered and rejected all of FPL's arguments in issue four, we overrule that
issue. Having overruled all of FPL's issues, we affirm the trial court's judgment.

 AFFIRMED.



 ____________________________

 HOLLIS HORTON

 Justice



Submitted on January 15, 2009

Opinion Delivered October 29, 2009 

Before McKeithen, C.J., Gaultney and Horton, JJ.

1. In 2001, the Legislature changed the name of the Texas Natural Resource
Conservation Commission to "Texas Commission on Environmental Quality," with the
change to be effective January 1, 2004. See Act of April 20, 2001, 77th Leg., R.S., ch. 965,
§ 18.01, 2001 Tex. Gen. Laws 1985.
2. In its present form, section 27.104 states: "The fact that a person has a permit issued
under this chapter does not relieve him from any civil liability." Tex. Water Code Ann.
§ 27.104 (Vernon 2008).
3. Section 36.002 provides:


 The ownership and rights of the owners of the land and their lessees and
assigns in groundwater are hereby recognized, and nothing in this code shall
be construed as depriving or divesting the owners or their lessees and assigns
of the ownership or rights, except as those rights may be limited or altered by
rules promulgated by a district. A rule promulgated by a district may not
discriminate between owners of land that is irrigated for production and
owners of land or their lessees and assigns whose land that was irrigated for
production is enrolled or participating in a federal conservation program.


Tex. Water Code Ann. § 36.002 (Vernon 2008).



4. The Geo Viking opinion on rehearing stated: "In denying petitioner's application for
writ of error, we should not be understood as approving or disapproving the opinions of the
court of appeals analyzing the rule of capture or trespass as they apply to hydraulic
fracturing." Geo Viking, Inc. v. Tex-Lee Operating Co., 839 S.W.2d 797, 798 (Tex. 1992)
(per curiam op. withdrawn on reh'g).

5. Ultimately, Garza did not determine whether the subsurface fracing at issue
constituted a trespass. Instead, the Court concluded that the rule of capture precluded
damages for drainage caused by hydraulic fracturing, and also concluded that the Court need
not decide whether the subsurface fracing present in Garza constituted a trespass. Coastal
Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 12, 17 (Tex. 2008). 
6. As explained in footnote 1, the Texas Natural Resource Conservation Commission
is now the Texas Commission on Environmental Quality.
7. As the Texas Supreme Court has explained:


 If one or more elements of that cause of action was omitted from the charge,
and there was no request to include the omitted element or objection to its
exclusion, and no written findings were made by the trial court on the omitted
element, then the omitted element must be deemed found by the trial court in
a manner that supports its judgment.


TRI v. J.T.T., 162 S.W.3d 552, 558 (Tex. 2005).