# IN THE SUPREME COURT OF TEXAS

════════════

No. 09-0999

════════════

TEXAS A&M UNIVERSITY - KINGSVILLE, PETITIONER,

v.

MELODY YARBROUGH, RESPONDENT

════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

════════════════════════════════════════════

**Argued January 4, 2011**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court, joined by JUSTICE MEDINA, JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE LEHRMANN.

JUSTICE WILLETT delivered a dissenting opinion, joined by JUSTICE HECHT, JUSTICE WAINWRIGHT, and JUSTICE JOHNSON.

An associate professor contends that her application for tenure was undermined by a department chair's summary of a performance evaluation in which the professor received an "exceptional" numerical rating. Although she was given the opportunity to rebut the summary, the professor asserts that the university prevented her from filing an official grievance. The professor was granted tenure before she filed the present suit requesting a declaration that the university's action violated Government Code section 617.005. We must decide whether her complaint about the university's grievance process survives her status as a tenured professor. Because we conclude

that this case presents no live controversy, we reverse the court of appeals' judgment and render judgment dismissing the case.

After receiving a performance narrative that she believed contradicted her exceptional numerical score, Melody Yarbrough, an associate professor at Texas A&M University-Kingsville (TAMUK), sought to contest it. She complained to the faculty grievance committee that the narrative would be prejudicial to her upcoming tenure application. While the committee initially indicated it would implement formal grievance procedures, TAMUK ultimately quashed the grievance because procedures set out in the TAMUK Faculty Handbook and Texas A&M University System Regulations do not address complaints based upon an allegedly negative performance review. These procedures, formally adopted by either the Texas A&M University System Board of Regents under section 85.21(a) of the Education Code or by TAMUK under authority delegated by the board, are at the heart of Yarbrough's complaint. Yarbrough contends that the procedures violate section 617.005 of the Government Code[1] because they do not provide a minimally adequate opportunity to present her grievance. She sought a declaratory judgment to that effect.

TAMUK moved for summary judgment arguing, among other things, that Yarbrough's complaint about her negative evaluation was mooted when TAMUK gave her tenure. Yarbrough disagreed, contending that because TAMUK had not changed its policy, TAMUK continued to violate her right to present grievances. The trial court granted TAMUK's motion without stating

_____

[1] *See* TEX. GOV'T CODE § 617.005 ("This chapter does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.").

2

the grounds therefor. Yarbrough appealed but did not mention the mootness issue. *See* TEX. R. APP. P. 38.1(f) ("The brief must state concisely all issues or points presented for review."). Nonetheless, the court of appeals held that the case was not moot because "a repetition of events in this case is likely." 298 S.W.3d at 370.

"Capable of repetition yet evading review" is a rare exception to the mootness doctrine. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). It applies only when "the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot." *Gen. Land Office v. Oxy U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990) (quoting *Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 18 (Tex. App.—Houston [1st Dist.] 1988, no writ)). There must also be a reasonable expectation that the same action will occur again if the issue is not considered. *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.").

Here, Yarbrough complained that TAMUK's policy prevented her from grieving portions of the narrative that were less than flattering and were, she contended, a "setup for not getting tenure." But TAMUK then awarded her tenure.[2] Yarbrough argues that TAMUK continues to enforce its policy, violating her right to present future grievances. While Yarbrough may wish to grieve some future action, there is no evidence that she would be precluded from seeking review of TAMUK's policy when (and if) those grievances arise—that is, there has been no showing that

---

[2] The department chair who wrote the narrative approved Yarbrough for tenure.

TAMUK's enforcement of its policy was "of such short duration" that she would be unable to obtain review before the issue becomes moot. *Gen. Land Office*, 789 S.W.2d at 571. Nor is there evidence that Yarbrough will receive subsequent negative evaluations that she may wish to grieve. *Cf. Williams*, 52 S.W.3d at 184-85 (holding that inmates did not satisfy the capable-of-repetition requirement because "[w]hether and when [they] may be charged with a crime that would lead to their incarceration . . . is speculative"). Although the parties continue to dispute the lawfulness of TAMUK's grievance procedures, "that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009) (holding that plaintiffs' claims challenging state's forfeiture procedures were mooted by resolution of underlying property disputes).

The dissent, seizing upon an argument Yarbrough raised for the first time in this Court, contends that the controversy survives because the evaluation remains part of Yarbrough's file and may be used against her in future employment decisions. This reasoning appears to be based on the collateral consequences exception to mootness–that even though Yarbrough's primary injury has been resolved, she continues to suffer collateral legal consequences from negative aspects of the narrative. *See Gen. Land Office*, 789 S.W.2d at 571. But the possibility that the "taint" of a negative evaluation could lead to unspecified future harm does not present a "substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added); *Governor Wentworth Reg. Sch. Dist. v. Hendrickson*, 201 F. App'x 7, *9 (1st Cir. 2006) (holding that case seeking declaration regarding constitutionality of student

suspension was moot after student graduated; potential bearing on student's prospective employment possibilities lacked immediacy and reality required to support declaratory judgment); *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 999 (9th Cir. 2005) (holding that controversy was moot despite alleged enduring "taint" of lower court judgments); *Sandidge v. Washington*, 813 F.2d 1025, 1026 (9th Cir. 1987) (concluding that suit seeking declaration regarding legality of poor performance evaluation of National Guard member was moot after plaintiff left the military, despite his contention that the negative evaluation remained part of his record and could adversely affect his future employment prospects).

We reverse the court of appeals' judgment and render judgment dismissing the case. TEX. R. APP. P. 60.2(c).

 

 

 

_____
Wallace B. Jefferson
Chief Justice

OPINION DELIVERED: August 26, 2011

5