**Opinion issued January 22, 2026.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00789-CV

_____

**DARRYL AND DARRESHA GEORGE, Appellants**

**V.**

**BARBERS HILL INDEPENDENT SCHOOL DISTRICT, Appellee**

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Case No. 23-DCV-0776**

---

## MEMORANDUM OPINION

This case concerns the interpretation of Section 25.902 of the Texas Education Code, commonly referred to as the Texas CROWN Act. Section 25.902 prohibits school districts from adopting dress or grooming policies that "discriminate against

a hair texture or protective hairstyle commonly or historically associated with race."[1] After the Texas CROWN Act went into effect, Appellee Barbers Hill Independent School District filed a petition against Appellant Darresha George on behalf of her son, Appellant Darryl George,[2] seeking a judicial declaration that its dress and grooming policy restrictions limiting male student hair length do not violate Section 25.902. Appellants subsequently filed a counterpetition seeking a judicial declaration that the District's male-student hair length restrictions violate Section 25.902 and seeking temporary and permanent injunctive relief prohibiting the District from enforcing its dress and grooming policy against Appellant Darryl George.

Following a bench trial, the trial court rendered judgment in favor of the District concluding that Section 25.902 does not render unlawful those portions of the District's dress and grooming policy restrictions limiting male student hair length. This appeal ensued. Appellants request that we reverse the trial court's final judgment and render declaratory judgment in favor of Appellants declaring that the District's male-student hair-length restrictions violate Section 25.092.

---

[1] TEX. EDUC. CODE § 25.902(b).

[2] Appellant Darryl George was a minor when Appellee filed its declaratory judgment action.

The parties have raised important questions of first impression, and they have done so with commendable clarity and rigor. Ordinarily, such questions would warrant a decision on the merits. Yet the judicial role is bounded by constitutional and prudential limits. Because the case has become moot, those limits prevent us from answering the important questions before us. We vacate the trial court's judgment and dismiss the appeal for lack of subject matter jurisdiction.

**Texas CROWN Act**

Section 25.902 of the Texas Education Code, known as the Texas CROWN Act, went into effect on September 1, 2023. The Act, which "relat[es] to discrimination on the basis of hair texture or protective hairstyle associated with race," added new sections to the Education Code, Labor Code, and Property Code. *See* TEX. EDUC. CODE §§ 25.902, 51.979; TEX. LABOR CODE § 21.1095; TEX. PROP. CODE § 301.0045. The only statute at issue in this appeal is Section 25.902 of the Texas Education Code.

Section 25.902, entitled "Prohibition on Certain Discrimination in Student Dress or Grooming Policy," states:

> (a) In this section, "protective hairstyle" includes braids, locks, and twists.
>
> (b) Any student dress or grooming policy adopted by a school district, including a student dress or grooming policy for any extracurricular activity, may not discriminate against a hair texture or protective hairstyle commonly or historically associated with race.

3

Tex. Educ. Code § 25.902.

## Background

In August 2023, Appellant Darryl George ("Darryl") enrolled in Barbers Hill Independent School District ("District") for the 2023-2024 school year and began attending Barbers Hill High School. The District's dress and grooming policy then in effect stated in relevant part:

> Male students' hair will not extend, at any time, below the eyebrows or below the ear lobes. Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down.

On September 21, 2023, the District filed a declaratory judgment action in state district court seeking a judicial declaration that Section 25.902 of the Education Code did not "render unlawful those portions of [the District's] dress and grooming restrictions limiting male student hair length." The District named Appellant Darresha George as a defendant on behalf of her son Darryl, who was then seventeen years old. In its petition, the District alleged that Darryl, a male student who identified as Black or African American, "wears his hair at a length that extends below the top of a t-shirt collar, below the eyebrows, and/or below the ear lobes when let down," "currently wears his hair gathered in braids or twists," and "is currently in violation of the District's dress and grooming code due to the length of his hair." According to the District, Darryl was placed in an in-school suspension

4

classroom and was subject to a "possible placement in the District's alternative education center due to [his] continuing noncompliance with the District's dress and grooming code based on [his] hair length."

Appellants filed a general denial, a request for declaratory judgment, a request for a temporary restraining order, and a request for injunctive relief. They requested that the court issue declaratory relief declaring unlawful that portion of the District's policy applicable to male student hair styles and lengths. They also sought attorneys' fees and costs.[3]

Following a bench trial on the merits, the trial court issued a final judgment in favor of the District declaring that Section 25.902 of the Education Code "does not render unlawful those portions of [the District's] dress and grooming restrictions limiting male student hair length." The trial court denied all relief not expressly granted. This appeal followed.

---

[3] Appellants also filed a counterpetition in which they asserted claims against the District for race discrimination, sex discrimination, violations of Darryl's rights under the First and Fourteenth Amendment to the United States Constitution, and state law claims for breach of fiduciary duty and intentional infliction of emotional distress. Appellants removed the case to the United States District Court for the Southern District of Texas, but the case was ultimately remanded to state district court in Chambers County. Appellants later nonsuited their counterclaims for race and sex discrimination, violations of Darryl's constitutional rights, breach of fiduciary duty, and intentional infliction of emotional distress, leaving for consideration only Appellants' requests for declaratory relief, injunctive relief, and attorneys' fees and costs.

**Jurisdiction**

Appellants filed their notice of appeal in June 2024. Two months later, in August 2024, Darryl withdrew from the District and enrolled for his senior year in the Goose Creek Consolidated Independent School District for the 2024-25 school year. It is undisputed that Darryl graduated from a Goose Creek ISD high school in May 2025.

In June 2025, the District filed a suggestion of mootness arguing the case is moot because Darryl "can no longer be enrolled by the Barbers Hill Independent School District as a student" and thus Darryl no longer has a legally cognizable interest in the outcome of this case. The District argues that because Darryl has graduated from high school, he will never again be subject to the District's dress and grooming policy and a judicial declaration regarding whether the policy violates Section 25.902 will have no practical effect on Darryl. The case is thus moot.

Invoking the collateral consequences exception to the mootness doctrine, Appellants respond that although Darryl has graduated from high school, the case is not moot because Darryl suffered "prejudicial events, concrete disadvantages, and disabilities, the effects of which will persist and continue to stigmatize him going forward." Appellants argue that the District "confined . . . [Darryl] to in school suspension and withheld [him] from regular curriculum instruction during his entire year of junior high school due to his refusal to cut his protective hairstyle commonly

6

or historically associated with race" and that Darryl "was forced to transfer out of the District to avoid being subjected to the same treatment during his senior year." They argue that as a result, Darryl "suffered concrete educational disadvantages and/or disabilities," including emotional distress and poor academic performance. Appellants further contend that Darryl's academic and disciplinary records, which the District maintains and which Darryl "will likely be required to disclose in the future," will "burden him with a concrete disadvantage that will persist going forward."

Appellants last argue that the case is not moot because the question of whether the District's policy violates Section 25.902 impacts all male students in the District who wear protective hairstyles, not just Darryl. And even if part of the appeal is moot, the entire case is not moot because they have live claims for their reasonable and necessary attorneys' fees and costs of suit. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding [for declaratory judgment] under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

The District responds that the collateral consequences exception is inapplicable because the disadvantages and disabilities Darryl claims to have suffered did not result from the trial court's judgment but rather stem from the District's purportedly wrongful conduct. According to the District, "these

7

consequences would exist regardless of whatever action a court could take in this case." The District argues that Darryl's concerns "that his disciplinary record will follow him and limit his educational, financial, and employment opportunities," are speculative and not supported by any evidence. And although a judicial declaration regarding the lawfulness of the District's policy could impact other students in the District, this is not a class action and none of those students are parties to the trial court case or this appeal.

The District last argues that Appellants' claims for attorneys' fees and costs do not prevent the case from being moot because Appellants are not eligible to recover attorneys' fees and cost under Section 37.009 of the Texas Civil Practice and Remedies Code based on their claim for declaratory judgment. The District argues that Appellants cannot recover fees and costs under Section 37.009 because they also challenged the legality of the policy in administrative proceedings.[4]

## A. Mootness

Mootness is a component of subject matter jurisdiction. *See Tex. Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 866–67 (Tex. 2025). Therefore, before reaching the merits, we must determine whether there is a live controversy to be resolved or whether the matter is now moot requiring

---

[4] TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding [for declaratory judgment] under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

8

dismissal. Like the other core justiciability doctrines, mootness "is rooted in the Texas Constitution" and prohibits courts from rendering advisory opinions. *Id.* at 873–84; *In re J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021) ("Any ruling on the merits of a moot issue constitutes an advisory opinion, which we lack jurisdiction to issue."). A court's "lack of jurisdiction over moot cases is a mandate of the constitution, not a matter of convenience." *Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021). If a case is or becomes moot, a court "must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012).

A case is moot when "a justiciable controversy no longer exists between the parties," the "parties no longer have a legally cognizable interest in the case's outcome," the "court can no longer grant the requested relief or otherwise affect the parties' rights or interests," or "any decision would constitute an impermissible advisory opinion." *Panda Power*, 619 S.W.3d at 634–35 (Tex. 2021) (citing *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018)). In other words, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman*, 369 S.W.3d at 162.

A case may become moot at any time, including on appeal. *See id.* at 166. When assessing mootness, courts must first determine whether "the case is moot on

9

its face—that is, has the live controversy come to an end," and if so, does any "exception" to mootness apply. *Grassroots Leadership*, 717 S.W.3d at 874. Two recognized "exceptions" to the mootness doctrine are the collateral consequences exception and the capable-of-repetition exception.[5] *Id.* at 874. Although they are often described as "exceptions" to mootness, they are not true exceptions because they "do not allow courts to disregard the boundaries of the judicial power and adjudicate cases that are *actually* moot." *Id.* at 883 (emphasis in original). Rather, the exceptions "elucidate when a case that seems moot *actually remains live* for reasons that might not be immediately apparent." *Id.* (emphasis in original). In other words,

> [T]here are no exceptions to the fundamental constitutional requirement that courts may reach the merits of only live disputes. Each recognized mootness "exception" complies with that mandate by identifying disputes that *seem* to have ended but in fact remain live and thus are not truly moot at all in a constitutional sense. Each exception carefully ensures that the parties retain a genuine stake in the case and that a

---

[5] Appellants do not invoke the capable-of-repetition exception to the mootness doctrine. In *Grassroots Leadership*, the Texas Supreme Court held that to invoke the capable-of-repetition exception, a plaintiff must establish that "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that *the same complaining party* will be subjected to the same action again." *Tex. Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 884 (Tex. 2025) (emphasis in original) (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). "In other words, the *same dispute* still divides the *same parties* despite the seeming termination of the dispute's initial cause, thus generating a 'reasonable expectation' of that cause's recurrence." *Id.* (emphasis in original). Because Darryl has graduated from high school, he cannot be subject to the District's dress and grooming policies again and thus the capable-of-repetition exception is inapplicable.

> judgment resolving the dispute would still afford genuine relief. They are not exceptions to the Constitution's limitations and, particularly, its prohibition of advisory opinions.

*Id.* at 863 (emphasis in original).

The collateral consequences exception, which applies only in "rare circumstances," allows courts to decide cases "when vacating the underlying judgment will not cure the adverse consequences suffered by the party seeking to appeal that judgment." *Id.* at 883–84 (quoting *Marshall v. Housing Auth. of City of San Antonio*, 198 S.W.3d 782, 779 (Tex. 2006)). Collateral consequences exist "when, as a result of the judgment's entry, (1) concrete disadvantages or disabilities have in fact occurred," and "(2) the concrete disadvantages and disabilities will persist even after the judgment is vacated." *Marshall*, 198 S.W.3d at 789. The collateral consequences exception therefore applies only when adverse consequences result from the judgment rendered on the claim—not from the purportedly wrongful conduct underlying the claim—and when vacating the underlying judgment will not cure the adverse consequences. *See id.*

Although the collateral consequences exception most often arises in criminal proceedings, it also has been applied in civil proceedings involving challenges to "involuntary mental commitments, juvenile adjudications, protective orders, and contempt orders." *Hatten v. Univ. Interscholastic League*, No. 13–06–00313–CV, 2007 WL 2811833, at *4 (Tex. App.—Corpus Christi Sept. 27, 2007, pet. denied)

11

(mem. op.) (identifying types of cases to which collateral consequences exception applies and holding doctrine did not apply to students' appeal involving challenge to UIL eligibility determination); *see also Grassroots Leadership*, 717 S.W.3d at 883 (stating "[c]riminal cases are frequent examples" of cases involving collateral consequences exception because "[c]onvicts may be subject to burdens or obligations that linger even after any sentence has ended, affecting their right to vote, possess firearms, or enjoy other freedoms generally available to those without a conviction").

The Texas Supreme Court's recent opinion in *Grassroots Leadership* provides a comprehensive discussion of the mootness and the recognized "exceptions" to the doctrine. Discussing the collateral consequences exception, the court explained that a "dispute remains live under [that] exception only if the otherwise-moot claim *itself* is the source of a sufficiently concrete collateral consequence." *Id.* (emphasis in original). "If the consequence would exist regardless, then the case remains moot." *Id.* [6]

---

[6] The issue presented in *Grassroots Leadership* was whether the capable-of-repetition exception and purported public-interest exception to mootness demonstrated that a justiciable controversy between the parties remained. The court held the capable-of-repetition exception was not applicable and further that "there is no 'public-interest exception' that authorizes Texas courts to resolve moot cases." *Id.* at 888. Appellants are not relying on either the capable-of-repetition exception or the purported public-interest exception.

With these principles in mind, we address the parties' mootness arguments.

## B.    Collateral Consequences Exception

It is undisputed that Darryl graduated from high school in May 2025 and that he is no longer eligible to enroll as a student in the District. Darryl, who is no longer subject to disciplinary action for failing to comply with the policy, thus lacks a legally cognizable interest in obtaining declaratory relief regarding the legality of the policy or injunctive relief prohibiting the District from enforcing the policy against him. *See Grassroots Leadership*, 717 S.W.3d at 879–80 (holding case moot when plaintiffs challenging policy applicable to immigration detention centers were no longer detained in detention center); *see also Hatten*, 2007 WL 2811833 at *2 (holding students' appeal of UIL's determinations of eligibility moot when students' period of ineligibility had expired and one student had graduated from high school).

Although a judicial declaration regarding whether the District's policy violates Section 25.902 could impact the District's current and future male students who wear protective hairstyles, this has no bearing on the jurisdictional question before us. Darryl, who did not assert in the trial court any claims on behalf of a class of similarly situated persons, appealed from the final judgment on his own behalf and not as a member of a class. *See Panda Power*, 619 S.W.3d at 634–35 (requiring justiciable controversy between parties); *see also Grassroots Leadership*, 717

S.W.3d at 875 (stating mootness requires "judgment to actually affect the plaintiff, not merely vindicate a favored legal position").

Appellants argue that the case is not moot based on the collateral consequences exception to the mootness doctrine. According to Appellants, Darryl suffered and will continue to suffer concrete educational disadvantages and disabilities because the District placed him in in-school suspension and alternative learning centers during the entirety of his junior year for refusing to cut his hair to comply with the District's policy and he was forced to transfer to another District his senior year to avoid the same sanction. Appellants also argue that the District's superintendent "publicly maligned" Darryl in a paid advertisement the District placed in the Houston Chronicle in which the superintendent defended the policy. Appellants argue that as a result of the District's actions, Darryl experienced emotional distress and his grades suffered.

Appellants argue that the "lingering effects on [Darryl] owing to the concrete educational disadvantages and/or disabilities he has suffered as a result of the District's discriminatory conduct will not only persist and continue to stigmatize him, but cannot be absolved merely by dismissing the Appeal as moot." They argue that the "academic and disciplinary records the District maintains for [Darryl], which he will likely be required to disclose in the future—not to mention the public and pervasive stigma [Darryl] will have to bear as a result of the District suing him—

will burden him with a concrete disadvantage that will persist going forward." Appellants also argue that a student's academic and disciplinary record "often follows the student into adulthood and surfaces at critical junctures—such as when applying for college admission, financial aid, public and private grants, employment, professional licensure, and military enlistment," and "[]i]nstitutions and agencies routinely solicit academic transcripts and records, as well as conduct background checks to assess the character and fitness of applicants."

In support of their arguments, Appellants rely primarily on an affidavit from Darryl they submitted in support of their request for an emergency temporary restraining order in the trial court.[7] Darryl stated in his affidavit that he had been suffering since he was told "there was an issue with [his] hair," and he felt like he was "going crazy" and had "had to seek mental health treatment." Darryl stated he was "being harassed by school officials and treated like a dog," and he was "being subjected to cruel treatment and a lot of unkind words" from school officials. He stated that he had not received "regular instruction since August 30, 2023," his grades were "suffering," and he was "being completely ostracized." According to Darryl, the District's actions were "affecting [his] education [and] mental state" and

---

[7]    *See generally* TEX. GOV'T CODE § 22.220(c) (stating courts have power, "on affidavit or otherwise," to "ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction," even if evidence establishing those facts is not in trial court's record).

15

he asked the trial court to issue a temporary restraining order "to deliver [him] from the cruelty that [he was] experiencing all because of the issues between the Legislators, [the District] and the government."

Darryl's affidavit testimony, which predates the trial court's March 2024 final judgment, speaks to the negative consequences Darryl asserts he was experiencing in January 2024 because of the *District's conduct*, but it does not speak to any disadvantages or disabilities Darryl contends he is currently experiencing and will continue to experience because of the *trial court's judgment*—which is the relevant inquiry when invoking the collateral consequence exception to mootness. Appellants acknowledge that the "requisite collateral consequences exist 'when, *as a result of the judgment's* entry," concrete disadvantages or disabilities exist and will persist. (Emphasis added). But other than stating that "that is what happened to Darryl," Appellants do not explain why the entry of the trial court's judgment—as opposed to the actions of the District—resulted in collateral consequences. Appellants cite to the Texas Supreme Court's opinion in *Marshall v. Housing Authority of the City of San Antonio*, 198 S.W.3d 782 (Tex. 2006) but that case does not lend support to their argument. To the contrary, it underscores that the relevant inquiry is whether collateral consequences stem *from the trial court's judgment*.

In *Marshall*, the Housing Authority evicted Marshall from her apartment and the trial court rendered judgment in favor of the Housing Authority on its forcible

16

detainer action awarding the Housing Authority possession of the apartment. *Id.* at 784. While Marshall's appeal remained pending, her apartment lease expired. *Id.* at 785. The court held that the case had become moot because once Marshall's lease expired, there was no longer a live controversy between the parties regarding which party had a superior right to possession of the apartment. *Id.* at 787. Relying on the collateral consequences exception, Marshall argued that the case was not moot because the trial court's eviction judgment had caused her to lose her federal rent subsidy and the "loss of the subsidy might last for up to five years." *Id.* at 788. She argued that the judgment had "adverse practical collateral consequences, including the possibility that landlords may be dissuaded from renting an apartment to her" in the future. *Id.* According to Marshall, "a favorable appellate ruling reversing the trial court's judgment would ameliorate collateral consequences to her resulting from the judgment." *Id.*

Rejecting Marshall's argument, the court explained that the collateral consequences doctrine applies only in "narrow circumstances" and for it to apply, Marshall had to establish both "that a concrete disadvantage resulted *from the judgment* and that the disadvantage will persist even if the judgment is vacated and the case dismissed as moot." *Id.* at 789 (emphasis added). The court held there was no evidence that Marshall's federal rent subsidy would be denied in the future or that the practical consequence she identified—that future landlords might be

17

dissuaded from renting an apartment to her—would persist even if the trial court's judgment of eviction was vacated. *Id.*

Unlike the appellant in *Marshall*, Appellants do not argue that Darryl experienced adverse consequences stemming from the trial court's judgment. Although Appellants argue that Darryl experienced adverse consequences resulting from the District's actions, as in *Marhsall*, there is no evidence demonstrating that Darryl experienced concrete disadvantages and disabilities as a result of the trial court's judgment that will persist even if the judgment is vacated and the case dismissed as moot.

After the court heard oral argument in this appeal, Appellants filed a letter addressing "the panel's questions regarding the types of concrete disadvantages and disabilities that will persist for [Darryl] as part of the collateral consequences he will likely suffer" and directing the court to two amicus briefs filed in support of Appellants. Relying largely on academic articles and research, the amicus briefs state that hair discrimination, including the discriminatory application of school dress and grooming codes, has "lasting negative effects" on children that can "persist into adulthood," including poor mental and physical health, low self-esteem, depression, and an increased risk of suicide. Although helpful and informative, the amicus briefs provide no evidence of any concrete disadvantages or disabilities Darryl is experiencing because of the trial court's judgment that will persist even if

18

the judgment is vacated. At most, the amicus briefs and sources they cite, like Darryl's affidavit, provide evidence of possible ongoing disadvantages and disabilities that may result from the District's alleged conduct. *See Grassroots Leadership*, 717 S.W.3d at 885 (stating "evidence required [to establish applicability of mootness exception] is essentially the same as what a plaintiff must identify to rebut a defendant's establishment of facial mootness: a basis that is not speculative or hypothetical for why continuing the litigation would tangibly and directly affect the plaintiffs' rights").

We do not dismiss Appellants' arguments, nor do we discount Darryl's testimony. The evidence reflects, however, that the disadvantages and disabilities Darryl identifies, including emotional distress, poor grades, and stigmatization, are not the result of the trial court's judgment declaring that the District's dress and grooming policy does not violate Section 25.902. As the District points out, these purported disadvantages and disabilities "would exist regardless of whatever action a court could take in this case" and regardless of any action this Court takes on the merits of the pending appeal.

In their post-oral argument letter brief, Appellants contend that "while the factual collateral consequences may exist regardless of the trial court's decision below, the legal consequences to [Darryl] persist only by virtue of the imposition of the trial court's final judgment." Appellants, however, do not identify any ongoing

19

legal consequences to Darryl caused by the trial court's judgment nor do they explain why such consequences will not be negated by vacating the judgment. In that respect, this case is unlike others where courts have recognized the application of the collateral consequences exception to mootness based on stigmatization and adverse legal consequences resulting from the trial court's judgment. *See, e.g., State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980) (holding that significant and prejudicial effects stemming from order of involuntary commitment and confinement in mental-health hospital continued to stigmatize person subject of order even though commitment order had expired and thus case was not moot); *Carrillo v. State*, 480 S.W.2d 612. 617–18 (Tex. 1972) (holding that "deleterious collateral effects and legal consequences" stemming from juvenile-delinquency adjudication continued to stigmatize adjudicated person even though person had served his sentence and reached age of majority and thus appeal was not moot); *see also In re Salgado*, 53 S.W.3d 752, 757–58 (Tex. App.—El Paso 2001, no pet.) (holding that father's challenge to expired protective order was not moot because order resulted in significant collateral legal repercussions involving ongoing child custody determinations). This case is more akin to *Hatten v. University Interscholastic League*, where the court held that two students' challenge to a UIL's determination of ineligibility to play sports in high school had become moot because the period of ineligibility had expired and one of the two students challenging the determination

20

had graduated from high school. 2007 WL 2811833 at *2. The court held that the collateral consequences doctrine did not apply because the students had "not shown that (1) a concrete disadvantage had resulted from the judgment and (2) the disadvantage [would] persist even if the judgment [was] vacated" and the case dismissed as moot. *Id.* at *4 (comparing facts of case to other cases where collateral consequences doctrine applied involving "stigmatizing consequences inherent in involuntary mental commitments, juvenile adjudications, protective orders, and contempt orders"); *see also Univ. Interscholastic League v. Jones*, 715 S.W.2d 759, 760 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (holding appeal of permanent injunction allowing high school student to play football was moot because student had graduated from high school).

Appellants argue that a student's academic and disciplinary record "often follows the student into adulthood and surfaces at critical junctures—such as when applying for college admission, financial aid, public and private grants, employment, professional licensure, and military enlistment," and "[]i]nstitutions and agencies routinely solicit academic transcripts and records, as well as conduct background checks to assess the character and fitness of applicants." But Appellants do not tether these consequences to the trial court's judgment. And there is also no evidence that any of these potential scenarios has materialized and thus any concerns about the possible future impact of Darryl's academic and disciplinary records are speculative.

21

The Texas Supreme Court's opinion in *Texas A & M University–Kingsville v. Yarbrough*, 347 S.W.3d 289 (Tex. 2011) is instructive on this point. In *Yarbrough*, an associate professor who applied for tenure received an allegedly improper negative performance evaluation that she believed would harm her tenure prospects. *Id.* at 289–90. Because the university's grievance policy prevented her from filing an official grievance challenging the evaluation, Yarbrough sued the university requesting a declaration that the university's action violated a provision in the Texas Government Code. *Id.* at 290. The university moved for summary judgment arguing that Yarbrough's complaint about her negative evaluation was moot because her application for tenure had been granted. *Id*. Yarbrough argued on appeal that although she had been granted tenure, a justiciable controversy remained because "the evaluation remain[ed] part of [her] file and may be used against her in future employment decisions." *Id*. at 291. The majority, recognizing that Yarbrough's argument appeared to be premised on the collateral consequences exception to mootness, held that Yarbrough's claim was moot on its face because although "the possibility that the 'taint' of a negative evaluation could lead to unspecified future harm it d[id] not present a 'substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Id.* (emphasis in original) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) and citing *Governor Wentworth Reg. Sch.*

22

*Dist. v. Hendrickson*, 201 Fed. Appx. 7, 9 (1st Cir. 2006) (holding case seeking declaration regarding constitutionality of student suspension was moot after student graduated and potential effect of suspension on student's prospective employment possibilities lacked immediacy and reality required to support declaratory judgment)).

Here as well we conclude that Appellants' case is moot and that the collateral consequences exception to mootness does not apply. Appellants have not established both "that a concrete disadvantage resulted from the [trial court's] judgment and that the disadvantage will persist even if the judgment is vacated and the case dismissed as moot." *Marshall*, 198 S.W.3d at 789. Nor have they presented evidence of any materialized consequences resulting from Darryl's disciplinary or academic records. *Grassroots Leadership*, 717 S.W.3d at 878 (holding that the mootness test "poses a practical test, not one that turns on speculative, theoretical, contingent, or unlikely events that *might* happen") (emphasis in original).[8]

---

[8] During oral argument, the District's counsel stated that Darryl's school transcript reflects only the courses taken and the grades earned. According to the District's counsel, minor disciplinary consequences that occur in public schools are neither reflected in the student's transcript nor "become part of a larger record." The District's counsel stated that the common application used for college admissions asks whether a student has been expelled from school, not whether the student has faced disciplinary actions for dress and grooming code violations. Asked how the District maintains its disciplinary records, the District's counsel stated that public school districts are required to report to the Texas Education Agency all disciplinary consequences imposed by the district and the TEA retains that information, which is submitted in an anonymous fashion, and information regarding minor

This case presents important questions of first impression, thoroughly briefed and skillfully argued by the parties. We do not minimize the importance of these issues, nor the care with which they have been presented. But, however compelling the questions may be and "[h]owever much we may desire to provide answers in these now-moot . . . proceedings, the constitution prohibits us from doing so, and we must respect that prohibition." *Panda Power*, 619 S.W.3d at 631.

## C.  Attorneys' Fees

Appellants argue that even if some of the claims in this case are moot, they have live claims for their reasonable and necessary attorneys' fees and costs of suit, which prevent the case from being moot. *See Grassroots Leadership*, 717 S.W.3d at 877 (stating "case 'is not rendered moot simply because some of the issues become moot during the appellate process'") (quoting *Heckman*, 369 S.W.3d at 162); *Marshall*, 198 S.W.3d at 790 (stating "in some instances a case is not moot even though the only issue presented relates to court costs" but holding "the issue of the Housing Authority's costs and post-judgment interest on those costs" did not present "a controversy preventing dismissal of the case for mootness").

In their first amended countersuit, Appellants pleaded for "costs of suits herein, including reasonable attorney fees through appeal." The District argues that

---

consequences, such as being sent to in-school suspension, are purged at the end of the year and all school records are purged after seven years.

Appellants cannot recover attorneys' fees and costs based on their declaratory judgment claim seeking a declaration that the policy violates Section 25.902 because they challenged or could have challenged the legality of the policy in the grievances they filed with the District that were subsequently appealed to the Commissioner of Education. *See* TEX. EDUC. CODE 7.057 (allowing appeal to commissioner by person aggrieved by actions or decisions of school district board of trustees); *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 445 (Tex. App.—Austin 2011, no pet.) ("Because the relief sought in Poole's declaratory-judgment action is redundant of the relief available to her in a suit for judicial review under [Section 7.057(d) of the Education Code], the trial court did not err in dismissing Poole's declaratory-judgment action and the accompanying request for attorney's fees.").

Even if Appellants were not eligible to recover their attorneys' fees and costs based on their declaratory judgment claim, as the District contends, the District also filed a declaratory judgment action. The trial court thus could have awarded Appellants their costs and fees based on the District's claim. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (stating court "may award costs and reasonable and necessary attorney's fees as are equitable and just" in any declaratory judgment action); *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Under section 37.009, a trial court may exercise its discretion to award attorneys' fees to the prevailing party, the nonprevailing party, or neither.").

25

In any event, the trial court did not award attorneys' fees or costs to either party—and neither party appealed from the denial of their requests for attorneys' fees and costs. There is thus no pending or unresolved claim for attorneys' fees and costs that can "breathe[] life" into this otherwise moot case. *Grassroots Leadership*, 717 S.W.3d at 877 (quoting *Harper*, 562 S.W.3d at 7).[9]

\* \* \*

Based on the record before us, we hold the case became moot when Darryl graduated from high school in May 2025 because he is no longer subject to disciplinary action for failing to comply with the District's dress and grooming policy, and thus there is no live controversy between the parties regarding the legality of the policy. We further hold that the collateral consequences exception to mootness is inapplicable.

---

[9] In their post-oral argument letter brief, Appellants argue that a finding of mootness in his case will have the "practical effect" that "only freshman or perhaps sophomore students who are subjected to the District's racially-discriminatory conduct will likely ever be able to obtain relief from Texas courts." We note that if a live controversy arises between the District and another student who is adversely affected by the policy, nothing prevents those parties from seeking an expeditious resolution of their dispute in a trial court. And in the event either party appeals the trial court's judgment, appellate courts, including this court, routinely consider requests for accelerated consideration of appeals when hearing the appeal in due course could have the undesirable result of depriving the court of jurisdiction. *See generally ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 631 (Tex. 2021).

26

## Conclusion

We vacate the trial court's judgment and dismiss the case for lack of subject-matter jurisdiction. *See Heckman*, 369 S.W.3d at 162 (stating if case becomes moot, court "must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction").


                                        Veronica Rivas-Molloy
                                        Justice


Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.